**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUOKUNG TECHNOLOGY CORP. et al., | |
| *Plaintiffs,* | |
| v. | |
| U.S. DEPARTMENT OF DEFENSE et al., | |
| *Defendants.* | Case No. 1:21-cv-00583-RC |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..........................................................................................................1

II.     STATEMENT OF FACTS ...........................................................................................3

      A.     Luokung is a Commercial Technology Company that is Not Affiliated with the Chinese Government or Military, nor Owned or Controlled by the Chinese Government, Military, or any Entity Affiliated with the Chinese Government's Defense Industrial Base. ................................................................3

      B.     DoD Issued the CCMC Designation without Notice, Explanation, or an Opportunity to be Heard. ............................................................................6

             1.     Section 1237 was enacted in 1999, but DoD did not act until 2020...........6
             2.     Then-President Trump issued and then amended E.O. 13959.....................7
             3.     The Government processes relating to E.O. 13959, its amendment, and the CCMC Prohibitions were highly unusual. ....................................8
             4.     DoD designated Luokung as a CCMC on January 14, 2021. .....................9
             5.     Defendants have not provided any administrative avenue for relief. .......10

      C.     Plaintiffs Sought Court Intervention, and DoD Relisted Luokung.......................10

             1.     Plaintiffs' Complaint...................................................................................10
             2.     DoD delisted and then relisted Luokung. ...................................................11

      D.     Subsequently, Defendants Disclosed the Decisional Memo................................12

      E.     Plaintiffs Are Experiencing, and Will Continue to Experience, Irreparable Harm as a Result of the CCMC Designation. .......................................................13

             1.     Delisting of Luokung's securities and harm to shareholders....................14
             2.     Harm to Luokung's ability to operate in competitive fields .....................15
             3.     Harm to Luokung's ability to recruit and retain employees .....................16
             4.     Harm to Luokung's relationships with financial institutions....................17
             5.     Harm to Luokung's reputation and credibility...........................................18
             6.     Harm to the Individual Plaintiffs ...............................................................19

III.    ARGUMENT.............................................................................................................20

      A.     Plaintiffs are Likely to Succeed on the Merits of Their Claims. ..........................20

             1.     The CCMC Designation violated the APA.................................................20

                    a.     DoD's explanation for designating Luokung is inadequate...........22
                    b.     Luokung does not meet the Section 1237 statutory criteria...........24
                    c.     The CCMC Designation lacked substantial evidence....................26

d.     The CCMC Designation was made without observance of procedure required by law. ...........................................32

2.     The CCMC Designation and the CCMC Prohibitions are *ultra vires*...................................................................................33
3.     The CCMC Designation and CCMC Prohibitions violate the due process clause of the Fifth Amendment.................................33

a.     Plaintiffs are protected by the Due Process Clause. .....................34
b.     Plaintiffs were entitled to due process prior to the deprivation of their interests. ..............................................35
c.     The CCMC Designation and CCMC Prohibitions will deprive Plaintiffs of liberty and property interests without due process of law.........................................................36

4.     Section 1237 is unconstitutionally vague. .................................39

B.     The Remaining Factors Support Injunctive Relief. ...............................42

1.     The CCMC Designation and the CCMC Prohibitions have caused, and will continue to cause, irreparable harm to Plaintiffs. .......................42

a.     Luokung has been and will be irreparably harmed......................42
b.     The Individual Plaintiffs have been and will be irreparably harmed..........................................................................44

2.     The balance of equities and the public interest support injunctive relief. .......................................................................45

IV.   CONCLUSION..............................................................................46

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atamirzayeva v. United States,*
  524 F.3d 1320 (Fed. Cir. 2008)........................................................................................35

*Bayer HealthCare, LLC v. F.D.A.,*
  942 F. Supp. 2d 17 (D.D.C. 2013) ...................................................................................43

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972)..........................................................................................................37

*Bracco Diagnostics v. Shalala,*
  963 F. Supp. 20 (D.D.C. 1997) .........................................................................................22

*Bridges v. Wixon,*
  326 U.S. 135 (1945)..........................................................................................................41

*Chamber of Com. of the United States v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ..........................................................................................33

*Chevron Mining Inc. v. United States,*
  863 F.3d 1261 (10th Cir. 2017) .........................................................................................25

*Child Evangelism Fellowship of Va. v. Williamsburg-James City Cty. Sch. Bd.,*
  No. 4:08cv4, 2008 U.S. Dist. LEXIS 61392 (E.D. Va. Aug. 8, 2008) ...................................40

*Cmty. for Creative Non-Violence v. Turner,*
  893 F.2d 1387 (D.C. Cir. 1990) ....................................................................................39, 40

*Connecticut v. Doehr,*
  501 U.S. 1 (1991)..............................................................................................................38

*County of Los Angeles v. Shalala,*
  192 F.3d 1005 (D.C. Cir. 1999) ........................................................................................22

*Defs. of Wildlife v. Jewell,*
  815 F.3d 1 (D.C. Cir. 2016) ..............................................................................................21

*Dickinson v. Zurko,*
  527 U.S. 150 (1999)..........................................................................................................21

*Doe v. Dep't of Justice,*
  753 F.2d 1092 (D.C. Cir. 1985) ........................................................................................37

*DSE, Inc. v. United States,*
   169 F.3d 21 (D.C. Cir. 1999) ..................................................................................45

*FBME Bank Ltd. v. Lew,*
   209 F. Supp. 3d 299 (D.D.C. 2016) ........................................................................32

*Feinerman v. Bernardi,*
   558 F. Supp. 2d 36 (D.D.C. 2008) ..........................................................................45

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ................................................................................................39

*Greatness v. FEC,*
   831 F.3d 500 (D.C. Cir. 2016) ................................................................................45

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
   219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd,* 333 F.3d 156 (D.C. Cir. 2003) .............35

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
   333 F.3d 156 (D.C. Cir. 2003) ..........................................................................21, 36

*Humanitarian Law Project v. Dep't of Treasury,*
   463 F. Supp. 2d 1049 (C.D. Cal. 2006) ..................................................................41

*\*Humanitarian Law Project v. Dep't of Treasury,*
   484 F. Supp. 2d 1099 (C.D. Cal. 2007) ..................................................................41

*Inland Steel Co. v. NLRB,*
   170 F.2d 247 (7th Cir. 1948) ..................................................................................41

*Judalang v. Holder,*
   565 U.S. 42 (2011) ..................................................................................................22

*Kessler v. Surface Transp. Bd.,*
   635 F.3d 1 (D.C. Cir. 2011) ....................................................................................33

*League of Women Voters v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016) ....................................................................................46

*Lynch v. United States,*
   292 U.S. 571 (1934) ................................................................................................39

*Mass. Lobstermen's Ass'n v. Ross,*
   349 F. Supp. 3d 48 (D.D.C. 2018) ..........................................................................25

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ....................................................................................34, 35, 39

*Mey v. DIRECTV, LLC,
   971 F.3d 284 (4th Cir. 2020) ........................................................................25

Meyer v. Nebraska,
   262 U.S. 390 (1923) ......................................................................................38

Mills v. District of Columbia,
   571 F.3d 1304 (D.C. Cir. 2009) ...................................................................42

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
   463 U.S. 29 (1983) .............................................................................21, 22, 24

*Mylan Pharm., Inc. v. Shalala,
   81 F. Supp. 2d 30 (D.D.C. 2000) ...........................................................42, 43

N. Mariana Islands v. United States,
   686 F. Supp. 2d 7 (D.D.C. 2009) .................................................................46

*Nat'l Council of Resistance of Iran v. Dep't of State,
   251 F.3d 192 (D.C. Cir. 2001) .....................................................................35

Nken v. Holder,
   556 U.S. 418 (2009) ......................................................................................45

*Norlin Corp. v. Rooney, Pace, Inc.,
   744 F.2d 255 (2d Cir. 1984) .........................................................................44

Old Dominion Dairy Prod., Inc. v. Sec'y of Defense,
   631 F.2d 953 (D.C. Cir. 1980) .....................................................................37

Paul v. Davis,
   424 U.S. 693 (1976) ......................................................................................37

*Poett v. United States,
   657 F. Supp. 2d 230 (D.D.C. 2009) .............................................................23

Pratt v. State,
   516 So. 2d 328 (Fla. Dist. Ct. App. 1987) ...................................................40

Propert v. District of Columbia,
   948 F.2d 1327 (D.C. Cir. 1991) ...................................................................39

R.I.L-R v. Johnson,
   80 F. Supp. 3d 164 (D.D.C. 2015) ...............................................................46

*Ralls Corp. v. Comm. on Foreign Inv.,
   758 F.3d 296 (D.C. Cir. 2014) ...............................................................34, 39

*Reeve Aleutian Airways, Inc. v. United States,*
   982 F.2d 594 (D.C. Cir. 1993) ...............................................................37

*Reid v. Covert,*
   354 U.S. 1 (1957) (plurality opinion) ...................................................34

*Simms v. District of Columbia,*
   872 F. Supp. 2d 90 (D.D.C. 2012) .........................................................42

*\*TikTok Inc. v. Trump,*
   No. 1:20-cv-02658, 2020 U.S. Dist. LEXIS 177250 (D.D.C. Sept. 27, 2020).................42, 43

*\*TikTok Inc. v. Trump,*
   No. 1:20-cv-02658-CJN, 2020 U.S. Dist. LEXIS 232977 (D.D.C. Dec. 7,
   2020) .......................................................................................................21

*Turner v. U.S. Agency for Glob. Media,*
   No. 20-cv-2885-BAH, 2020 U.S. Dist. LEXIS 219215 (D.D.C. Nov. 20,
   2020) .......................................................................................................20

*United States v. Verdugo-Urquidez,*
   494 U.S. 259 (1990)................................................................................34

*United Student Aid Funds v. Espinosa,*
   559 U.S. 260 (2010)................................................................................39

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)................................................................................20, 45

*\*Xiaomi Corp. v. Dep't of Def.,*
   No. 1:21-cv-00280-RC, 2021 U.S. Dist. LEXIS 46496 (D.D.C. 2021) ......................... *passim*

**Statutes**

5 U.S.C. § 704 ...............................................................................................21

5 U.S.C. § 706(2)(A)......................................................................................21

5 U.S.C. § 706(2)(D)......................................................................................32

5 U.S.C. § 706(2)(E)......................................................................................21

Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, Section 1237................... *passim*

National Defense Authorization Act for Fiscal Year 1999 NDAA FY99, Pub. L.
   105-261, 112 Stat. 2160 (Oct. 17, 1998) as amended by Section 1233 of
   Public Law 106-398 and Section 1222 of Public Law 108-375 ..................... *passim*

**Other Authorities**

31 C.F.R. § 501.807 ..................................................................................................10

31 C.F.R. § 561.322 ..................................................................................................25

CNN, Why China Still Needs Silicon Valley, December 17, 2018, available at:
    https://edition.cnn.com/2018/12/16/tech/china-tech-silicon-valley/index.html
    (last visited March 29, 2021) ......................................................................29

Executive Order 13959, 85 Fed. Reg. 73185 (Nov. 12, 2020) ............................. *passim*

Executive Order 13974, 86 Fed. Reg. 4875 (Jan. 13, 2021)....................................1, 7, 8

Federal Aviation Administration, New Era of U.S. Commercial Space
    Transportation Begins, available at:
    https://www.faa.gov/news/press_releases/news_story.cfm?newsId=25880
    (last visited March 29, 2021) ......................................................................27

International Data Corporation, IDC Forecasts Improved Growth for Global AI
    Market in 2021, February 23, 2021, available at:
    https://www.idc.com/getdoc.jsp?containerId=prUS47482321 (last visited
    March 29, 2021)..........................................................................................28

Own, Black's Law Dictionary (11th ed. 2019)...........................................................25

U.S. Constitution Fifth Amendment ..................................................................... *passim*

Wall Street Journal, Americans Won't Be Banned From Investing in Alibaba,
    Tencent and Baidu, Wall Street Journal, January 13, 2021 ...........................29

Webster's Third New Int'l Dictionary 35 (2002) .......................................................25

## I.      INTRODUCTION

Plaintiff Luokung Technology Corp. ("Luokung") is a publicly-traded, independently managed commercial technology company that principally offers internet advertising and map services, as well as in-dash navigation systems.  It is headquartered in China, but is not owned or controlled by, or affiliated with, the Chinese government or military, nor is it owned or controlled by any entity affiliated with the Chinese defense industrial base.  Despite this, on January 14, 2021, defendant U.S. Department of Defense ("DoD") falsely designated Luokung as a "Communist Chinese military company" ("CCMC") under Section 1237 ("Section 1237") of the National Defense Authorization Act for Fiscal Year 1999, Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998), as amended by Section 1233 of Pub. L. 106-398 and Section 1222 of Pub. L. 108-375 (as amended, "NDAA FY99"), without any notice or opportunity to be heard, or even any established process to challenge the designation.

This unlawful designation (the "CCMC Designation") will result in U.S. shareholders being prohibited from acquiring Luokung securities and being required to divest their shares (the "CCMC Prohibitions") pursuant to Executive Order 13959, 85 Fed. Reg. 73185 (Nov. 12, 2020), as amended by Executive Order 13974, 86 Fed. Reg. 4875 (Jan. 13, 2021) (as amended, "E.O. 13959"), which was issued after the recent election, in the waning days of the Trump administration.  Without the Court's intervention, the CCMC Designation and CCMC Prohibitions will cut Luokung off from the U.S. capital markets, interfere substantially with its business and contractual relationships, and cause other irreparable harm to the company's financial condition, operations, standing, and reputation.  Likewise, the CCMC Designation and CCMC Prohibitions will deprive Luokung's thousands of U.S. shareholders, including individual plaintiffs Baomin Li and Raymond Weiman Bai (together, the "Individual Plaintiffs"), who are U.S. citizens and

beneficial owners of Luokung shares, of the ability to acquire, freely transact in, or otherwise make their own investment decisions concerning their Luokung securities.  Plaintiffs will suffer such irreparable harm without ever having been provided a fair and reasonable opportunity to show that Luokung is in fact *not* a CCMC, as the facts readily and overwhelmingly demonstrate.

As set forth below, the CCMC Designation and the associated CCMC Prohibitions, as applied to Luokung and the Individual Plaintiffs, violate the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), Section 1237, and the Fifth Amendment to the U.S. Constitution. Plaintiffs are likely to succeed on the merits of their claims, and will be irreparably harmed if the Court does not enter a preliminary injunction.  Without preliminary injunctive relief, under E.O. 13959, the CCMC Prohibitions will go into effect against Luokung and its shareholders as of May 8, 2021 – and, as a direct result of the CCMC Designation, Nasdaq (the only public market for Luokung's shares) intends to halt trading of, and delist, Luokung's securities as of that date.

Most of the legal issues presented in this motion relating to Plaintiffs' APA claim and request for preliminary injunctive relief have already been resolved by this Court in the related case *Xiaomi Corp. v. Dep't of Def.*, No. 1:21-cv-00280-RC, 2021 U.S. Dist. LEXIS 46496 (D.D.C. 2021).  Like Xiaomi, Luokung is a publicly-traded company that is not owned or controlled by any prohibited entity, but was nonetheless designated as a CCMC, purportedly based upon its affiliation with the Chinese government.  And like Xiaomi, Luokung contends that its designation violates the APA and the U.S. Constitution.  This Court preliminarily enjoined the designation and prohibitions relating to Xiaomi and, in doing so, resolved a number of issues also relevant to Plaintiffs' claims here.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *13-37.  Among other key rulings, this Court in its *Xiaomi* decision (1) held that the decisional memo DoD used to explain its decision as to Xiaomi – which had the same form as the one used for Luokung – violated the

APA because it contained material errors (including misstating the CCMC criteria under Section 1237) and failed to provide a satisfactory explanation for the decision; (2) rejected the overbroad definition of the phrase "affiliated with" advanced by the government, finding that the plain meaning of "affiliate" to be used under Section 1237 is "a company effectively controlled by another or associated with others under common ownership or control"; (3) found that involvement in commercial technologies such as artificial intelligence ("AI") that also happen to have military uses is insufficient to support a finding that a company is a CCMC; and (4) held that the financial, reputational, and other injuries suffered by Xiaomi, which parallel those suffered by Plaintiffs, constitute irreparable harm.  *Id.*  As set forth below, each of these prior rulings is directly applicable here and strongly support an injunction relating to Luokung as well.

For the reasons set forth herein, and because it is in the public interest to enjoin Defendants' unlawful actions, Plaintiffs respectfully request that the Court enter a preliminary injunction enjoining the enforcement of the CCMC Designation and the CCMC Prohibitions as to Luokung.

## II.     STATEMENT OF FACTS

**A.     Luokung is a Commercial Technology Company that is Not Affiliated with the Chinese Government or Military, nor Owned or Controlled by the Chinese Government, Military, or any Entity Affiliated with the Chinese Government's Defense Industrial Base.**

Luokung is a Nasdaq-traded technology company headquartered in Beijing, China, and incorporated in the British Virgin Islands.  Declaration of Baomin Li ("Li Decl.") ¶ 6.[1]  It has thousands of U.S. shareholders, including some of its largest shareholders, and substantial other connections to the United States.  *Id.* ¶¶ 15-19.  Through its subsidiaries and affiliates, Luokung operates several lines of business focused on location-based products and services for civilian and

---

[1] Unless otherwise noted, all declarations referenced herein are being filed together with this motion.

commercial use.  *Id.* ¶ 8.  Its customers primarily include other private firms, and are not related to the Chinese military or defense industry.  *Id.*

Luokung's primary operations are in two principal lines of business.  *Id.*  The first line of business, operated mainly through its subsidiary Beijing Zhong Chuan Shi Xun Technology Limited, focuses on using Luokung's technology to generate advertising revenue.  *Id*. ¶ 8.  For years, the core of this business was Luokung's mobile application called "Luokuang" (the "App").  *Id.* ¶ 9.  The App provides localized content for travelers in China, particularly on China's express rail system, and derives revenue through advertising.  *Id.* ¶¶ 8-9.  The App allows users to access entertainment and other content.  *Id.*  In addition, it shows the user's location on the layout of Luokung's map, which is central to the App, while also displaying other information on the map such as nearby restaurants and the posts of others using the App nearby.  *Id.* ¶ 9.  While unique and proprietary, the App offers a variety of features similar to those that would be familiar to U.S. users of competing apps such as Google Maps, Yelp, and Instagram.  *Id.* ¶ 9 and Ex. A.

While still offering its App, since 2019 the focus of Luokung's advertising business has shifted.  *Id.* ¶ 10.  Luokung now provides user acquisition (advertising/marketing) services to internet advertisers.  *Id.*  Luokung assists clients in placing advertisements on social media and other internet advertising platforms.  *Id.*  Through its LKMap business, it also offers third-party app developers access to its open source map platform, which provides online map services, in exchange for the promotion of Luokung's clients' advertisements on their apps.  *Id.*  Historically, Luokung's advertising business has provided virtually all of Luokung's revenue.  *Id* ¶ 14.

Luokung's second principal line of business is navigation and mapping, including through its recently acquired subsidiary eMapgo Technologies (Beijing) Co., Ltd. ("EMG").  Luokung completed its acquisition of EMG in March 2021.  *Id.* ¶¶ 8, 12.  EMG has developed

comprehensive maps of China and is one of the four largest suppliers of in-dash car navigation systems in China. *Id.* It has provided map services for 32 domestic and foreign car manufacturers, such as GM, involving more than 140 models of cars. *Id.* ¶ 12. EMG also has been increasingly involved in providing the mapping information needed to support autonomous driving capabilities in cars. *Id.* For example, EMG has an agreement with Ford China allowing Ford to use EMG's maps in the cars Ford is developing with autonomous driving capabilities to be sold in China. *Id.* EMG would be paid a fee from Ford for each car sold with its technology. *Id.*

Luokung has two other main operating subsidiaries. Li Decl. ¶ 13. SuperEngine Graphics Software Technology Development (Suzhou) Co., Ltd. is a commercial provider of spatial-temporal data processing technology. *Id.* It enables Luokung to provide faster internet map services, and has been used in a wide variety of industries. *Id.* Beijing BotBrain AI Technology Ltd. is focused on providing personalized content for customers through its machine learning and voice dialogue technology. *Id.* Its technology, for example, helps recommend products based on a user's prior purchases or views, and helps businesses provide better tailored employee orientations and trainings based on particular employees' interests or needs. *Id.*

Luokung does not design or manufacture any military or defense products, or any products that are uniquely military in nature, and the company's overall strategy and operations are focused solely on delivering civil and commercial products and services to a global market. *Id.* ¶ 26.

Luokung is not owned by, controlled by, or affiliated with the People's Liberation Army or any Chinese government ministry. *Id.* ¶ 7; Declaration of Xuesong Song ("Song Decl.") ¶ 5. Nor is it owned or controlled by an entity affiliated with the defense industrial base of the Chinese government. Li Decl. ¶ 7; Song Decl. ¶ 5. No Chinese government or military entity, or any entity affiliated with its defense industrial base, possesses the ability to exert control over the

- 5 -

management or operations of Luokung.  Li Decl. ¶ 7; Song Decl. ¶ 5.  Neither Luokung nor any

of its affiliated companies is part of the Chinese government or military, or any entity affiliated

with the Chinese defense industrial base, nor does the Chinese government or military, or any

entity affiliated with the Chinese defense industrial base, play any role in shaping the company's

strategy, management, governance, operations, or business.  Li Decl. ¶¶ 24-26; Song Decl. ¶¶ 8-9.

To the contrary, Luokung is a publicly traded, independently managed corporation that

provides services for civilian and commercial use.  Li Decl. ¶ 22; Song Decl. ¶ 6.  Luokung's

eleven largest investors own approximately 60% of its ordinary shares.  Li Decl. ¶ 24.  None of

those investors is in any way affiliated with the Chinese military, government, or defense industrial

base, nor is Luokung aware of any other shareholder having any such affiliation.  *Id*.  Luokung is

overseen by a board of directors including two executive directors and three independent directors,

none of whom is affiliated with the Chinese government, military, or any entity affiliated with the

Chinese defense industrial base.  Li Decl. ¶ 22; Song Decl. ¶ 6.  Luokung's business is managed

by an executive management team under the oversight of Luokung's Chief Executive Officer,

Xuesong Song, who is also the Chairman of the board of directors.  Li Decl. ¶ 22; Song Decl.

¶¶ 1, 6.  Mr. Song is a civilian businessperson, and is not a part of the Chinese government,

military, or any entity affiliated with the Chinese defense industrial base.  Song Decl. ¶¶ 2-3.  Mr.

Song is also Luokung's largest shareholder, holding both the largest percentage of the company's

ordinary shares as well as an amount of preferred shares that accord him a supermajority of the

company's voting rights.  *Id*. ¶ 7.  As such, Mr. Song has ultimate control of the company.  *Id.*

**B.     DoD Issued the CCMC Designation without Notice, Explanation, or an Opportunity to be Heard.**

**1.     Section 1237 was enacted in 1999, but DoD did not act until 2020.**

As part of Section 1237, Congress directed the Secretary of Defense to identify CCMCs

that "operate directly or indirectly in the United States" by issuing a list of CCMCs on or before

March 1, 2001, and updating that list on an annual basis.  NDAA FY99 § 1237(b).  As relevant to

this action, Section 1237 defines a CCMC as a person that:

> (i) is owned or controlled by, or affiliated with, the People's Liberation Army or a
> ministry of the government of the People's Republic of China or that is owned or
> controlled by an entity affiliated with the defense industrial base of the People's
> Republic of China; and (ii) is engaged in providing commercial services,
> manufacturing, producing, or exporting.

*Id*. § 1237(b)(4)(B).  "People's Liberation Army" is defined as "the land, naval, and air military

services, the police, and the intelligence services of the Communist Government of the People's

Republic of China, and any member of any such service or of such police."  *Id.* § 1237(c).

DoD was required to issue a list of CCMCs by March 2001, and to update the list annually,

but it did not issue any such list until more than 19 years later.  Indeed, it appears that DoD was

not aware of Section 1237 until it was brought to the attention of DoD by a letter from Senator

Tom Cotton in 2020.  *See* Declaration of Shawn Larsen-Bright ("Larsen-Bright Decl.") Ex. A.

Subsequently, DoD published its first list of CCMCs in June 2020.  *Id.*[2]

### 2.    Then-President Trump issued and then amended E.O. 13959.

On November 12, 2020, just days after the election was publicly called for now-President

Biden, then-President Trump issued E.O. 13959, entitled "Addressing the Threat from Securities

Investments that Finance Communist Chinese Military Companies."  *Id.* Ex. B.  Two months later,

on January 13, 2021, one week before his exit from office, then-President Trump amended E.O.

13959 via Executive Order 13974.  *Id.* Ex. C.  The amendment altered and clarified the restrictions

---

[2] DoD has designated 44 entities as CCMCs as of the filing of this memorandum.  Unlike Luokung
and Xiaomi, which have sought judicial review of their CCMC designations, to date no other
entities have sought judicial review and, based on publicly available information, the vast majority
of these entities appear to be owned or controlled by the Chinese government and/or appear to
make military/defense products.

imposed in the original executive order and further provided, among other things, that U.S. persons are required to divest the securities of any company designated as a CCMC. *Id.*

Pursuant to E.O. 13959, as amended, U.S. persons are forbidden from engaging in "any transaction in publicly traded securities, or any securities that are derivative of, or are designed to provide investment exposure to such securities, of any Communist Chinese military company." *Id.* Ex. B at § 1(a). A "Communist Chinese military company" includes any person listed as a CCMC pursuant to Section 1237. *Id.* § 4(a)(i). As relevant to this action, for persons designated as CCMCs after the issuance of the Executive Order, all such transactions are barred beginning 60 days after the designation. *Id.* § 1(a)(ii). However, U.S. persons may engage in transactions "solely to divest, in whole or in part" from CCMC securities for 365 days, and must divest all such securities within that time frame. *Id.* § 1(c); *see also* Larsen-Bright Decl. Ex. C.

### 3. The Government processes relating to E.O. 13959, its amendment, and the CCMC Prohibitions were highly unusual.

Charles Steele is a former senior U.S. Department of the Treasury ("Treasury Department") official and an expert in the field of economic sanctions. Declaration of Charles M. Steele ("Steele Decl.") ¶¶ 6-10 and Ex. A. Mr. Steele previously served as Chief Counsel for the Treasury Department Office of Foreign Assets Control ("OFAC"), where he led a team providing advice and support to OFAC and other Treasury Department personnel in the formulation, implementation, and enforcement of economic sanctions. *Id.* Prior to that appointment, he served in a number of other senior government positions pertaining to sanctions and related issues. *Id.*

As explained in his declaration, Mr. Steele has analyzed E.O. 13959 and the publicly available facts and circumstances surrounding the executive order and its amendment. *Id.* ¶¶ 5, 12-47. Based on his substantial expertise in this area, Mr. Steele has opined that: (a) the timing, circumstances, and substance of E.O. 13959 and its amendment, and of related public statements

and guidance, indicate that the interagency governmental process used in the formulation and implementation of E.O. 13959 and its amendment was materially different than interagency processes used with respect to other International Emergency Economic Powers Act ("IEEPA")-based executive sanctions orders over the past several years; (b) the process appears to have been rushed and haphazard as the change in presidential administrations approached; and (c) input from those with primary responsibility for implementing and administering U.S. economic sanctions – particularly OFAC – appears to have been either not sought or disregarded to a degree that, in Mr. Steele's experience, would be highly unusual.  *Id.*  Overall, the process followed by the government was extremely atypical.  *Id.*

### 4.    DoD designated Luokung as a CCMC on January 14, 2021.

On January 14, 2021 – the day after the Trump Administration amended E.O. 13959 – DoD designated "Luokong Technology Corporation (LKCO)" – a misspelled variation of Luokung Technology Corp. – as a CCMC.  Larsen-Bright Decl. Ex. D.  The CCMC Designation was a complete surprise to Luokung.  Luokung in fact is not a CCMC; it received no notice it might be designated as one; and it first learned of the designation from public reports when the January 14, 2021 list of CCMCs (the "Section 1237 List") was released.  Li Decl. ¶¶ 20-21; Song Decl. ¶ 11.

Prior to the filing of this litigation and Plaintiffs' now-withdrawn Motion for Temporary Restraining Order, *see* Dkt. Nos. 9 and 15, Defendants did not provide any explanation as to why Luokung was designated as a CCMC.  Li Decl. ¶ 28; Song Decl. ¶ 11.  Luokung made best efforts to attempt to learn this information after the fact, to no avail.  Following the CCMC Designation, but prior to filing this lawsuit, Luokung submitted a Freedom of Information Act ("FOIA") request to DoD, along with a request for expedited processing, seeking information regarding the CCMC Designation.  Larsen-Bright Decl. Ex. J.  DoD initially rejected the request for expedited processing and stated that Luokung's request would be processed in the order received in light of

several thousand other pending requests.  *Id.* Ex. K.  Luokung immediately appealed DoD's denial

of the request for expedited processing.  *Id.* Ex. L.  Five weeks later, on March 23, 2021, DoD

notified Luokung that its appeal had been granted and that its FOIA request would "be placed

ahead of other pending requests in the queue."  *Id.* Ex. N.  However, DoD did not provide any

guidance regarding when it would process Luokung's request, and nothing has been received.  *Id.*

### 5.   Defendants have not provided any administrative avenue for relief.

Plaintiffs do not have any means to challenge the CCMC Designation through any form of

administrative process.  There is no established process at all, let alone a process that could provide

a reasonable opportunity for relief before the CCMC Prohibitions go into effect.  Unlike other

sanctions programs, no regulations or guidance have been published regarding any process for

challenging a CCMC designation or seeking removal from the Section 1237 List.  Steele Decl.

¶¶ 36-38.  In the context of other government sanctions programs, OFAC provides a process for

seeking delisting, pursuant to procedures in 31 C.F.R. § 501.807.  *See* Dkt. No. 9-6 (Declaration

of Lawrence Ward ("Ward Decl.")) ¶ 6.  Because no information has been published regarding a

delisting procedure relating to Section 1237, Luokung inquired with OFAC as to whether its

normal procedures would apply to seeking removal from the Section 1237 List.  *Id.* Ex. B.  OFAC

stated that DoD would be handling any potential removal process, rather than OFAC; however,

DoD has not issued any delisting procedure regulations or guidance, nor, to the best of Luokung's

knowledge, are there any other sanctions programs in which DoD administers a similar delisting

process.  *Id.* ¶ 6.  Luokung is thus unaware of any procedure that would allow it an opportunity to

be heard at any time, and certainly not before the CCMC Prohibitions go into effect.

### C.   Plaintiffs Sought Court Intervention, and DoD Relisted Luokung.

### 1.   Plaintiffs' Complaint.

Plaintiffs filed this action on March 4, 2021.  Plaintiffs' Complaint names as defendants

DoD, which was the agency responsible for publishing the list designating Luokung as a CCMC; Secretary of Defense Lloyd J. Austin III, who is sued in his official capacity as the person designated by Section 1237 to identify CCMCs; the Treasury Department, with which DoD was required to consult before designating Luokung as a CCMC; Secretary of the Treasury Janet L. Yellen, who is sued in her official capacity as the senior official of the Treasury Department, which is authorized by E.O. 13959 to promulgate rules and regulations to carry out its purposes; and President Joseph R. Biden Jr., who is sued in his official capacity in connection with E.O. 13959.

Plaintiffs allege that Defendants' actions are *ultra vires* and violate the APA and the Fifth Amendment.  In particular, Plaintiffs allege that Defendants' actions violate the APA because they were arbitrary and capricious, unsupported by substantial evidence, and did not comply with the requirements for the exercise of their authority.  Plaintiffs further allege that Defendants' actions were *ultra vires* because Luokung does not qualify as a CCMC under Section 1237 and E.O. 13959, and because they failed to comply with the requirements for exercising their authority. Plaintiffs also allege that Defendants' actions are unconstitutional because Plaintiffs received no notice of the CCMC Designation nor any opportunity to respond and be heard, and because Section 1237 should be considered unconstitutionally vague to the extent the undefined phrase "affiliated with" is being used to provide Defendants with effectively unfettered discretion.[3]

### 2.    DoD delisted and then relisted Luokung.

On January 27, 2021, OFAC issued General License 1A, which allows an extended period of time (until May 27, 2021) for U.S. persons to trade the securities or derivatives of entities whose names "closely match" but are not an exact match for those appearing on the Section 1237 List.

---

[3] Plaintiffs originally also sought a declaration from the Court that OFAC General License 1A applied to Luokung, but that claim was removed in their First Amended Complaint, for the reasons explained below.  *See* Dkt. No. 22.

*See* Dkt. No. 9-7.  The Section 1237 List identified "Luokong Technology Corporation (LKCO)" as a CCMC.  Luokung's legal name is "Luok**u**ng Technology **Corp**."  The name on the Section 1237 List therefore closely matched, but was not an exact match for, Luokung's name.

Accordingly, Luokung repeatedly sought confirmation from OFAC that General License 1A applied to Luokung and that the CCMC Prohibitions, if applicable to Luokung at all, would consequently not go into effect as to Luokung until May 27, 2021.  *See* Dkt. No. 9-6 (Ward Decl.) ¶¶ 4-5.  However, OFAC never answered the question.  *Id.*  Fearing that the CCMC Prohibitions therefore could be implemented as soon as March 15, 2021 (60 days after the original designation), Plaintiffs filed a motion for a temporary restraining order on March 5, 2021.  *See* Dkt. No. 9.

On March 9, 2021, DoD notified Congress and various executive agencies that it had erroneously listed the name "Luokong Technology Corporation," and that it was removing that name and replacing it with the correct spelling of Luokung's name.  Larsen-Bright Decl. Ex. E. The following day, Defendants notified Plaintiffs of this relisting and provided a letter from OFAC confirming that, as a result, the CCMC Prohibitions as to Luokung will go into effect on May 8, 2021, with full divestment by U.S. persons required by March 9, 2022.[4]  *Id.* Ex. F.  The parties subsequently jointly moved to vacate the temporary restraining order schedule and proceed with a preliminary injunction proceeding.  *See* Dkt. No. 15.  This motion follows.

### D.  Subsequently, Defendants Disclosed the Decisional Memo.

On March 16, 2021, Defendants disclosed the decisional memorandum setting forth the alleged bases for Luokung's designation as a CCMC (the "Decisional Memo").  Larsen-Bright

---

[4] The government has not explained why it went through the process of delisting and relisting rather than just confirming the applicability of General License 1A, which it had already issued and was applicable to Luokung by its plain terms (a point it conceded by acknowledging the error as to Luokung's name).  Notably, it appears that Luokung was the only entity designated as a CCMC whose name closely matched but did not exactly match the listing.

Decl. ¶ 7.  This disclosure – two months after the initial CCMC Designation, and a week after the corrected designation – was the first information that Plaintiffs received regarding the purported factual bases for DoD's determination that Luokung is a CCMC.  Defendants have confirmed that the designation of Luokung was based on the Decisional Memo.  *Id.*

The Decisional Memo identifies five purported facts as supporting the designation.  Larsen-Bright Decl. Ex. H.  As further detailed in Section III.A.1.c below, even if taken at face value, none of the five points supports the conclusion that Luokung is a CCMC.  One of the cited facts concerns Luokung's work in the general business sector of AI; the others concern *contracts* for commercial services with *other companies* in China (two private companies and two government-related companies) that were publicly announced by Luokung.  *Id.*  But neither Luokung's involvement in broad general business sectors nor any of these contracts in any way suggest that Luokung is a "Communist Chinese military company."  Luokung's business has nothing to do with the Chinese military or defense industry, nor do any of the cited contracts.  More importantly, to be designated as a CCMC under Section 1237, Luokung must be owned or controlled by, or affiliated with, the Chinese government or military, or owned or controlled by an entity affiliated with its defense industrial base.  Luokung is in fact not owned or controlled by any such entity, and nothing in any of the cited contracts gives the counterparties any ownership in, or any type of control over, Luokung or its operations.  Li Decl. ¶ 36.

As of the filing of this memorandum, Defendants have not produced any other portion of the administrative record.  Larsen-Bright Decl. ¶ 7.

### E.   Plaintiffs Are Experiencing, and Will Continue to Experience, Irreparable Harm as a Result of the CCMC Designation.

The CCMC Designation has caused, and will continue to cause, immediate and irreparable harm to Luokung and its shareholders, including the Individual Plaintiffs.  By tarnishing

Luokung's reputation, injuring its shareholders, and cutting it off from public capital markets, the CCMC Designation and the associated CCMC Prohibitions will interfere with and damage the company's business relationships, its ability to raise capital, its financial condition, and its ability to conduct and expand its business; and will harm its reputation and goodwill among business partners, investors, vendors, suppliers, and consumers.  Li Decl. ¶¶ 37-48.

### 1.  Delisting of Luokung's securities and harm to shareholders

On March 4, 2021, Nasdaq informed Luokung that as a result of the CCMC Designation and the original March 15, 2021, effective date of the CCMC Prohibitions, Nasdaq would halt the trading of Luokung's securities on March 15, 2021, and file a Form 25-NSE with the Securities and Exchange Commission to delist Luokung's securities from The Nasdaq Stock Market.  Li Decl. ¶ 47.  After OFAC later confirmed that the CCMC Prohibitions would not take effect as to Luokung until May 8, 2021, Nasdaq withdrew its initial delisting letter.  *Id.*  However, in a March 11, 2021 letter, Nasdaq stated that unless there are changes as to Luokung's status on the Section 1237 List, Nasdaq will issue a new delisting determination to be effective May 8, 2021.  *Id.*

The only public trading market for Luokung's shares is Nasdaq.  Li Decl. ¶ 17.  As a result, if the CCMC Prohibitions are permitted to go into effect, no one – including the Individual Plaintiffs and non-U.S. persons – will be able to publicly trade Luokung's securities at all, which will significantly restrict Luokung's liquidity and place downward pressure on the share price, while impeding or preventing U.S. persons from divesting their shares.  *Id.* ¶ 47.

These and related factors will not harm only Plaintiffs; they will also harm third-party investors – both individuals and institutions – who currently hold or plan to purchase publicly traded Luokung securities.  Li Decl. ¶ 46.  As a consequence of the CCMC Designation and CCMC Prohibitions, U.S. persons will no longer be able to purchase publicly traded Luokung securities once the CCMC Prohibitions go into effect, and must divest their holdings by March 9, 2022 –

without a public market to do so.  *Id.*  Luokung's thousands of U.S. shareholders will be directly harmed by these restrictions and limitations.  *Id.*  And all of Luokung's shareholders – both U.S. and foreign – will be unfairly and irreparably harmed by the devaluation of their shares and lack of liquidity that will result from the CCMC Designation and CCMC Prohibitions.  *Id.*

### 2.    Harm to Luokung's ability to operate in competitive fields

Luokung operates in highly competitive technology fields that include the autonomous driving, spatial-temporal data management, and Internet location-based services industry sectors. Li Decl. ¶ 38.   Remaining competitive in these industries, which are characterized by rapid innovation, frequent introduction of new products and services, and intense competition in the market, requires significant capital spending, including in research and development, marketing, and building and maintaining stable customers and sales channels.  *Id.*  Due to the demands of the fields in which it operates and intense competition, it is critical that Luokung has the ability to grow rapidly and to upgrade products and technologies continuously.  *Id.*  Luokung's business requirements thus include significant new investments on an ongoing basis.  *Id.*  The growth of Luokung to date has been made possible by hundreds of millions of dollars of investments it has received, most of which was facilitated through the U.S. capital markets.  *Id.*  Luokung's ability to grow and succeed is being harmed by the CCMC Designation and CCMC Prohibitions.  *Id.*

Since its listing on the Nasdaq, Luokung has raised approximately $190 million, of which approximately $100 million was raised from U.S. investors or through U.S. financial institutions. *Id.* ¶ 39.  However, the CCMC Designation and CCMC Prohibitions will cut off Luokung's access to investment from U.S. investors.  *Id.*  The U.S. capital markets are the world's largest and most liquid source of funding, and are by far the most important source of funding for Luokung.  *Id.*  As a result of the impacts of the CCMC Designation and CCMC Prohibitions, however, Luokung's ability to raise external capital will be significantly reduced and its cost of capital will increase.

*Id.* This will cause the company to put on hold or delay the progress of projects important to its business– projects that could proceed absent the CCMC Designation and CCMC Prohibitions – including outstanding business cooperation with U.S. companies (which will, in turn, negatively impact those U.S. companies). *Id.* This will significantly harm Luokung's business, standing, and reputation. *Id.*

The CCMC Designation and CCMC Prohibitions will also result in substantial downward pressure on Luokung's share price, as existing U.S. shareholders will be required to sell their shares and as U.S. investor demand for Luokung share purchases disappears. *Id.* ¶ 41. This downward pressure will put Luokung at a disadvantage to its competitors and other similarly situated companies that have not been designated as CCMCs. *Id.* Beyond the fundamental disadvantage resulting from the inability to raise capital from U.S. investors, the reduction in Luokung's share price will also hinder the company's ability to raise capital elsewhere. *Id.* These hindrances will negatively impact Luokung's ability to develop new technology platforms and pursue and complete major company projects, which could be expected to lead to loss of market share. *Id.* Even if the CCMC Designation and CCMC Prohibitions are ultimately revoked later, Luokung will not be able to cure the injury to its business suffered during the period they were in effect, and many of the business opportunities it loses during that time period will not reappear. *Id.*

### 3.   Harm to Luokung's ability to recruit and retain employees

The CCMC Designation and CCMC Prohibitions also have had, and will continue to have, a significant negative impact on Luokung's ability to recruit and retain talented employees. *Id.* ¶ 44. As a high-tech company, Luokung relies on a pool of technical professionals and senior engineers to create and refine innovative, high-performance products and service offerings. *Id.* Given the importance of talent to Luokung's business and competitive standing, the company's management has spent a significant amount of time recruiting senior engineers and scientists. *Id.*

The CCMC Designation and CCMC Prohibitions have hampered its recruiting efforts, damaged its international brand and corporate reputation, and created uncertainty about its future business prospects. *Id.* Since the CCMC Designation was announced, several potential recruits for senior technical positions have informed Luokung that they are reluctant to join Luokung because of the measures the U.S. government has taken against it. *Id.*

In addition, the CCMC Designation and CCMC Prohibitions will make it more difficult for Luokung to retain its existing talented employees and board members. *Id.* ¶¶ 43, 45. Most of Luokung's employees receive Luokung shares and/or stock options as part of their compensation, pursuant to the company's employee incentive plan, the 2018 Omnibus Equity Plan (the "Incentive Plan"). *Id.* ¶ 45. As with many technology companies, these equity grants are a very significant component of many employees' overall compensation packages. *Id.* In 2020, for example, approximately 73% of total compensation for Luokung's core employees was provided in the form of stock and stock options. *Id.* The impact of the CCMC Designation and CCMC Prohibitions on Luokung's share price will significantly reduce the value of these benefits to its employees, which will lead to further attrition of the company's core employees, and ultimately further negatively impact Luokung's business. *Id.* Moreover, within approximately one week of the CCMC Designation, Luokung's experienced and well-recognized independent director, Mr. Zhihao Xu, resigned from his position as a member of the Board of Directors. *Id.* ¶ 43.

### 4. Harm to Luokung's relationships with financial institutions

A ban on investments in Luokung by U.S. investors will not only adversely affect Luokung's ability to obtain capital from U.S. investors and to engage in strategic transactions with U.S. companies, it will likewise harm Luokung's strategic relationships with U.S. financial institutions, particularly those with headquarters based in the United States. *Id.* ¶ 40. In addition to underwriting capital markets transactions, U.S. financial institutions also act as trusted advisors

to Luokung in connection with, for example, identifying potential transactions or business opportunities, such as acquisitions, in which Luokung could participate. *Id.* U.S. financial institutions also play an important role in facilitating Luokung's ability to obtain capital from non-U.S. investors. *Id.* If the CCMC Prohibitions take effect in light of the CCMC Designation, these U.S. organizations will be much less motivated to maintain relationships with Luokung and will focus on building relationships with its similarly-situated competitors that have not been designated. *Id.* Once these critical business relationships (which are often sticky and ongoing) are formed with competitors, it will be difficult or impossible for Luokung to repair the resulting damage to its business from the loss of these relationships and connections, even if the CCMC Designation and CCMC Prohibitions are eventually lifted. *Id.*

Luokung's standing with stock market indexes and the firms that track them is also being harmed. FTSE Russell, which is responsible for numerous leading stock indexes, removed Luokung from its FTSE Global Total Cap and Micro Cap Indexes as a result of the CCMC Designation, and has informed Luokung that it will not be re-included unless the CCMC Designation is removed or the CCMC Prohibitions are rescinded. *Id.* ¶ 48. Luokung's removal from these indexes will lead funds that track them to divest Luokung's shares, creating further downward pressure on Luokung's share price, and inhibiting its access to capital. *Id.*

### 5.    Harm to Luokung's reputation and credibility

The CCMC Designation and CCMC Prohibitions will also have an ongoing adverse effect on Luokung's business by damaging its brand reputation and market credibility. *Id.* ¶ 42. Luokung has invested heavily in its core product and service areas to build a recognizable and well respected brand. *Id.* If Luokung's global customer base comes to see Luokung as a proxy for the Chinese military, due to the false CCMC Designation, it will be more difficult to maintain and grow this brand. *Id.* Shareholders and business partners have already informed Luokung that they are

concerned about the damage to their own businesses and reputations resulting from their association with a company that has been designated as a CCMC.  *Id.*  In addition, the CCMC Designation and CCMC Prohibitions have eroded market confidence in Luokung's ability to operate.  Two key advertising agency customers, to which Luokung provided advertising services, have already severed their relationships with Luokung expressly due to the CCMC Designation, which will result in millions of dollars of lost revenue this year alone.  *Id.*  Luokung expects further contract terminations will follow as a result of the CCMC Designation.  *Id.*  This damage to the company's reputation and goodwill will result in lower sales results, further downward pressure on Luokung's share price, a weakening of its competitive position, and harm to Luokung's long-term business prospects.  *Id.*

### 6.    Harm to the Individual Plaintiffs

The CCMC Designation and CCMC Prohibitions also will cause imminent, severe, and irreparable harm to the Individual Plaintiffs, U.S. citizens Baomin Li and Raymond Weiman Bai. Once the CCMC Prohibitions go into effect, these individuals will no longer be able to purchase Luokung securities or receive Luokung's shares or stock options as a form of compensation under the Incentive Plan.  *Id.* ¶¶ 45, 49-50; Declaration of Raymond Weiman Bai ("Bai Decl.") ¶ 4. These individuals will also be required to divest their Luokung securities by no later than March 9, 2022, a requirement that will force them to sell their shares under a compressed timeframe at a time when all other U.S. persons also will be required to divest their shares – market conditions that would depress Luokung's share price and result in a lower realization for the Individual Plaintiffs and all Luokung shareholders forced to sell their shares.  Li Decl. ¶ 50; Bai Decl. ¶ 4. The CCMC Prohibitions will not only cause Mr. Li and Mr. Bai to sell their shares at a significantly depressed price, to their detriment, but they will also be prevented from benefiting from future share appreciation.  *Id.*  Mr. Bai may be compelled to terminate his relationship with the company

if he is no longer able to receive awards under the Incentive Plan, which constitute a significant part of his compensation.  Bai Decl. ¶ 4.  With respect to Mr. Li, the CCMC Prohibitions will have a devastating impact and will force him to sever his relationship with the company that he has been greatly involved in developing for the past several years.  Li Decl. ¶ 50.

### III.     ARGUMENT

To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  These elements are readily satisfied here.

DoD issued the CCMC Designation without any basis in fact, without any notice to Luokung or to the thousands of affected U.S. shareholders whose rights are being infringed as a result of the designation, and without any means for Luokung or anyone else to meaningfully challenge the designation before the CCMC Prohibitions go into effect.  Because Plaintiffs are likely to succeed on the merits and will suffer irreparable harm, and because the balance of equities favors Plaintiffs and is in the public interest, the Court should enter a preliminary injunction enjoining the enforcement of the CCMC Designation and the CCMC Prohibitions as to Luokung.

### A.     Plaintiffs are Likely to Succeed on the Merits of Their Claims.

The first and "most important factor" in establishing entitlement to a preliminary injunction is whether the plaintiff is likely to succeed on the merits.  *Turner v. U.S. Agency for Glob. Media*, No. 20-cv-2885-BAH, 2020 U.S. Dist. LEXIS 219215, at *36 (D.D.C. Nov. 20, 2020).  Because Plaintiffs are likely to succeed, this factor weighs strongly in their favor.

#### 1.     The CCMC Designation violated the APA.

The APA empowers courts to set aside a "final agency action for which there is no other adequate remedy in a court" if that action is, among other things, "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 704, 706(2)(A) and (E).  This Court has already determined that a CCMC designation under Section 1237 is reviewable.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *15; *see also, e.g.*, *TikTok Inc. v. Trump*, No. 1:20-cv-02658-CJN, 2020 U.S. Dist. LEXIS 232977, at *39 (D.D.C. Dec. 7, 2020) ("[T]he decision-making process an agency employs to effectuate an executive order issued under IEEPA is subject to arbitrary and capricious review.") (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003)).

To satisfy the APA, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotations omitted).  If the agency does not articulate such a reasoned basis for its action, the Court "may not supply" one. *Id.*  The agency's action, moreover, must be supported by "substantial evidence" – that is, evidence that a "reasonable mind might accept" as "adequate to support a conclusion."  *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quotations omitted); *see also Defs. of Wildlife v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016) (explaining that "substantial evidence means enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict") (quotations omitted).  Agency action is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider[,] . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *State Farm*, 463 U.S. at 43.

Plaintiffs are likely to succeed on the merits of their APA claim because DoD has failed to provide a reasoned basis for the CCMC Designation that is supported by substantial evidence.  The Decisional Memo is the sole explanation for the CCMC Designation.  As was the case in *Xiaomi*,

the Decisional Memo here misstates the applicable statutory criteria, identifies a small number of innocuous public facts about Luokung that are devoid of context and do not suggest the statutory criteria are satisfied, and utterly fails to provide any connection between the cited facts and DoD's conclusion that Luokung is a CCMC.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*14-15.

Defendants may not engage in such inadequately explained decision-making; the law requires far more.  *See State Farm*, 463 U.S. at 43.  Absent a satisfactorily reasoned explanation, the court "must undo" the agency's action.  *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999).  Even in cases involving questions of national security, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*11-12 (quoting *Judalang v. Holder*, 565 U.S. 42, 53 (2011)).  Having failed to articulate a reasoned basis, supported by substantial evidence, for the CCMC Designation, the CCMC Designation is in violation of the APA and Plaintiffs are likely to succeed on the merits of their claim (Count 1).[5]

### a.    DoD's explanation for designating Luokung is inadequate.

As a threshold matter, the CCMC Designation is arbitrary and capricious because Defendants have failed to articulate in the record an adequate reasoned basis for the decision.  The Decisional Memo, which has been identified as the basis for the designation, is fundamentally flawed and as a matter of law cannot support the agencies' action.  *See State Farm*, 463 U.S. at 43.

The Decisional Memo does not explicitly identify Section 1237 as the source of DoD's authority, and when it purports to recite the elements of its analysis, it incorrectly quotes the statute, falsely suggesting that being affiliated with the People's Republic of China defense industrial base

---

[5] Where there is a prescribed administrative remedy, litigants are generally required to exhaust that remedy before seeking judicial relief.  However, where, as here, there are no regulations setting forth any process for an administrative remedy and Plaintiffs face irreparable harm, exhaustion is not required.  *See*, *e.g.*, *Bracco Diagnostics v. Shalala*, 963 F. Supp. 20, 31 (D.D.C. 1997).

would be a basis for a CCMC designation.  That is wrong.  Section 1237 instead identifies persons *owned or controlled by an entity affiliated with the defense industrial base* as potential CCMCs. This Court identified these "errors" in the *Xiaomi* case and noted that they "do not inspire confidence in the fastidiousness of the agency's decision-making process."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at 14; *see also Poett v. United States*, 657 F. Supp. 2d 230, 236-37 (D.D.C. 2009) (holding that agency determination suffered from "key flaws" when it "misquot[ed]" the statute at issue and applied "an incorrect definition" of a statutory term).

Defendants' carelessness as to Luokung did not end there.  As noted above, DoD also made two errors in connection with listing Luokung's name on its Section 1237 List.  Larsen-Bright Decl. Exs. D, E, and F.  It also misnamed one of the entities mentioned in the Decisional Memo with which Luokung contracted.  *Id.* Ex. H; Li Decl. ¶ 34 and Ex. D.  Furthermore, the description of Luokung's business in the "Business Summary" of the Decisional Memo is inaccurate and outdated; it quoted a historical description of one of Luokung's predecessor companies that is years out of date – even though current information about Luokung is readily available, as it is a Nasdaq-traded public company.  Li Decl. ¶ 36.  These errors provide further reason to question seriously the "fastidiousness" of the process as to Luokung.  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *14.

Beyond these basic problems, the Decisional Memo suffers from the critical failure that it is completely conclusory and does not provide any reasoned rationale.  The five specific "facts" identified in the Decisional Memo are discussed further below, but none of them connect to the statute.  The five cited facts reference Luokung's connection to general business sectors and publicly announced commercial contracts.  None of the facts show any alleged ownership, control, or affiliation with the Chinese government or military, or ownership or control by any entity affiliated with the Chinese defense industrial base, as is required under Section 1237.  And there

is nothing in the Decisional Memo that even attempts to *connect* the cited facts to the statutory criteria, as required by law.  *State Farm*, 463 U.S. at 43.  Instead, the Decisional Memo merely recites the false conclusion that Luokung "meets the criteria."  Larsen-Bright Decl. Ex. H.

The law does not permit agency decisions to be made in this conclusory fashion.  As this Court recently explained in the related *Xiaomi* case:

> The DoD Memo analysis consists of the following:  a recitation of the (misquoted) CCMC criteria, a citation to two facts pulled from Xiaomi's Annual Report, and then the blanket conclusion that "Xiaomi meets the [CCMC] criteria."  DoD Memo at 1.  This analysis (or lack thereof) skips the most critical step of an agency connecting the facts to the conclusion.  This required rational connection—or any connection—is lacking here.  Because the Department of Defense has done little more than parrot the language of a statute, followed by a conclusory statement, it has not adequately explained the basis for its decision.  Consequently, this is the type of case where, because Defendants have failed to state their reasoning the Court can declare with confidence that the agency action was arbitrary and capricious.

*Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *14-15 (case quotations and citations omitted).  The same is equally true here.

### b.    Luokung does not meet the Section 1237 statutory criteria.

It is not surprising that the Decisional Memo contains no reasoning tying the cited facts to the elements of Section 1237 because in fact Luokung is not a CCMC and does not meet the statutory criteria.  To be designated a CCMC, an entity must either be "owned or controlled" by the People's Liberation Army, a ministry of the Chinese government, or an entity affiliated with the defense industrial base of the Chinese government, or alternatively "affiliated with" the People's Liberation Army or a Chinese government ministry.  NDAA FY99 § 1237(b)(4)(B)(i).  Luokung does not satisfy any of these criteria.

The Decisional Memo does not attempt to suggest that Luokung is owned or controlled by the Chinese government, military, or any entity affiliated with the Chinese defense industrial base.  Nor could it, as the facts are indisputable that Luokung is *not* owned or controlled by any such

entities. Rather, the theory underlying the Decisional Memo appears to be that Luokung is being considered "affiliated with" the Chinese government. In fact, however, Luokung is *not* "affiliated with" the Chinese government – nor with the Chinese military or any entity affiliated with the Chinese defense industrial base, for that matter – under any reasonable meaning of that phrase.

The phrase "affiliated with" is commonly understood to refer to a situation in which a company is "'effectively controlled by another or associated with others under common ownership or control.'" *Mey v. DIRECTV, LLC*, 971 F.3d 284, 289 (4th Cir. 2020) (quoting Webster's Third New Int'l Dictionary 35 (2002)). This Court has already held that this definition is to be applied when interpreting Section 1237, rejecting alternative formulations proposed by Defendants. *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *17-19. In doing so, this Court confirmed that this definition of "affiliate" is supported by the "overwhelming weight of authority," is substantially similar to definitions used in DoD's own regulations and numerous statutes, and has been "adopted across the federal courts as the 'plain and ordinary meaning' of the term." *Id.*

Applying the proper definition of Section 1237's "affiliated" language to mean "a company effectively controlled by another or associated with others under common ownership or control," it is apparent that Luokung does not satisfy that definition. *Id.* Neither the People's Liberation Army nor any Chinese government ministry could conceivably be understood to "effectively control" Luokung, nor is Luokung "under common ownership or control" with any such entities.[6]

---

[6] The term "own" is understood to refer to possession or legal title. *See*, *e.g.*, Own, Black's Law Dictionary (11th ed. 2019) ("to rightfully have or possess as property; to have legal title to"); *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1273 (10th Cir. 2017) (relying on Black's Law Dictionary of "own"). The term "control" is understood to mean "something closer to, in dictionary parlance, to exercise directing or restraining influence over." *Mass. Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48, 63 (D.D.C. 2018). These definitions are consistent with Treasury Department definitions used in other IEEPA-based sanctions programs. *See*, *e.g.*, 31 C.F.R. § 561.322 (defining "owned or controlled" to mean entities in which a sanctioned government "owns a 50% or greater interest or a controlling interest, and any entity . . . which is otherwise

To the contrary, Luokung is a publicly-traded, independently managed commercial company.  Li Decl. ¶ 22; Song Decl. ¶ 6.  It is run by a board of directors and an executive management team – none of whom has any connection to the Chinese government, military, or defense industrial base – and it is ultimately responsible to its shareholders, *not* the Chinese government or military.  Li Decl. ¶ 22; Song Decl. ¶ 6.  The Chinese government and military do not play any role in shaping the company's strategy, management, operations, or business.  Li Decl. ¶ 25.  Moreover, a supermajority of voting rights in Luokung are held by its Chairman and CEO, Mr. Xuesong Song.  Song Decl. ¶¶ 7-8.  Thus, to the extent anyone can be said to effectively control Luokung, it would be Mr. Song, who is a civilian businessperson with no connection to the Chinese government, military, or defense industrial base.  Song Decl. ¶¶ 3, 7.  Furthermore, there is no "common ownership or control" between Luokung and the Chinese military, government ministries, or any entity affiliated with the Chinese defense industrial base.  Luokung is a publicly traded company and to Luokung's knowledge, *none* of Luokung's shares (which are publicly available via Nasdaq) is held by the Chinese government or military.  Li Decl. ¶ 24.  Put simply, there is *no evidence* that Luokung satisfies *any* of the criteria to be listed as a CCMC (and in fact it does not).  Thus, the CCMC Designation was beyond Defendants' statutory authority and violated the APA.

### c.    The CCMC Designation lacks substantial evidence.

For all of the reasons set forth above, Luokung does not satisfy the statutory criteria to be designated as a CCMC.  Nothing in the Decisional Memo rationally supports a different conclusion.  The decision lacked substantial evidence and violated the APA for this reason as well.

The Decisional Memo cites five public facts about Luokung as the basis for the CCMC

---

controlled by that government").

Designation.[7]  But none of the five cited facts, individually or together, even if taken at face value as set forth in the Decisional Memo, in any way suggest that Luokung is owned or controlled by the Chinese government, military, or any entity affiliated with the Chinese defense industrial base, or affiliated with the People's Liberation Army or any Chinese government ministry.  Accordingly, none of the cited facts supports the conclusion that Luokung is actually a CCMC.

The first fact cited by DoD concerns a publicly-announced cooperation agreement between Luokung and Land Space Technology Corporation ("Land Space"), a private company in the commercial space industry similar to SpaceX in the United States.  Larsen-Bright Decl. Ex. H at 1; Li Decl. Ex. A.  "Cooperation" agreements for commercial purposes like this one are common in Chinese business culture and are typically used to establish the framework for potential future business dealings.  Li Decl. ¶ 32.  Many other commercial companies have also entered cooperation agreements with Land Space, including a variety of both Chinese and international companies.  *Id.*  The Decisional Memo suggests that this announcement shows that Luokung is in the space industry.  But none of Luokung's lines of business or technologies are focused on space. Li Decl. ¶¶ 6-14.  Regardless, even if Luokung was in the space industry, that would not support a CCMC designation.  The commercial space industry is an estimated $400 billion global industry.[8]  The fact that Luokung signed a framework agreement to potentially provide commercial services to a China-based commercial space company does not in any way suggest that Luokung is aiding the Chinese military, and it is not.  Under the agreement, Luokung would

---

[7] The fact that the information being relied upon is exclusively from Luokung's own public press releases and website announcements about its business – as opposed to, for example, classified intelligence – itself provides further reason to doubt the vague, unsupported, and false implication that Luokung is some type of national security threat.

[8] Federal Aviation Administration, New Era of U.S. Commercial Space Transportation Begins, available at: https://www.faa.gov/news/press_releases/news_story.cfm?newsId=25880 (last visited March 29, 2021).

be treated as a preferred business partner for data management services if Land Space were to obtain any commercial satellite launch orders (which have not occurred to date).  Li Decl. ¶ 32. The agreement had nothing to do with the Chinese military or defense.  Li Decl. ¶ 36.

The second fact cited by DoD concerns Luokung's involvement in the field of AI and autonomous systems.  Luokung does not dispute that it is involved in these sectors; indeed, these areas are important parts of its business, and its investment in these areas is crucial to keeping up with its commercial competitors, which are also heavily engaged in developing these technologies. Li Decl. ¶ 33.  These technologies are widely and increasingly used in a variety of commercial applications, including in mobile applications and in autonomous driving where Luokung has a business focus.  Li Decl. ¶ 33.  But there is no connection between Luokung's commercial AI business and any military or defense activities; Luokung does not design or manufacture any military or defense products.  Li Decl. ¶ 26.  Mere participation in a general business sector that has potential alternative military uses cannot support a CCMC designation.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *21-22 (explaining that the fact that there are military applications for technologies in which Xiaomi is involved, including AI, was insufficient to support its CCMC designation).  AI in 2021 is an estimated $300+ billion industry, and AI technologies are becoming ubiquitous across all areas of business operations.[9]  Industry leaders include IBM, Microsoft, and Google.  There are many companies in China involved in this industry and the largest were *not* designated as CCMCs.  Indeed, public reporting has confirmed that the government chose not to designate the largest and much better known Chinese technology companies involved in AI

---

[9] International Data Corporation, IDC Forecasts Improved Growth for Global AI Market in 2021, February 23, 2021, available at:   https://www.idc.com/getdoc.jsp?containerId=prUS47482321 (last visited March 29, 2021).

because of the economic harm it would cause.[10]

The DoD's reliance on Luokung's connection to general business sectors involving countless other companies highlights the arbitrary and capricious nature of the CCMC Designation. In the Decisional Memo, DoD cites the 2019 DoD Industrial Capabilities Report for the idea that space systems are a "Traditional Sector of the Defense Industrial Base and a Critical Technology for modern military operations," and that AI and Autonomous Systems are "Critical Technologies used for modern military purposes." Larsen-Bright Decl. Ex. H. This public report generally discusses the "challenges and opportunities" for the U.S. defense industrial base; it does not specifically address Luokung, the agreements referenced in the Decisional Memo, or even the Chinese space industry. *See, e.g.*, Larsen-Bright Decl. Ex. I (Industrial Capabilities Report) at 9, 88-94. The fact that DoD believes that these industries are important to the defense industrial base in the United States, as discussed in the Industrial Capabilities Report, does not somehow transform Chinese companies with some connection to those industries into CCMCs. Involvement in business sectors of interest to DoD – or even of interest to the Chinese government or military – is not part of the statutory definition of a CCMC. Furthermore, involvement in these general business sectors does not in any way rationally suggest that Luokung is a military company, and it is not. The Decisional Memo does not identify *any* defense or military application of Luokung's technology in these sectors, nor any indication that Luokung is developing such technology at the behest of, or for the benefit of, the military or defense industry (and it is not). Again, simply

---

10 Wall Street Journal, Americans Won't Be Banned From Investing in Alibaba, Tencent and Baidu, Wall Street Journal, January 13, 2021; *cf.* CNN, Why China Still Needs Silicon Valley, December 17, 2018 (discussing large Chinese tech companies opening offices in the United States to develop AI and other technologies), available at: https://edition.cnn.com/2018/12/16/tech/china-tech-silicon-valley/index.html (last visited March 29, 2021).

suggesting that entire industries or technologies have potential military applications does not support the conclusion that Luokung is a CCMC.  This Court has already rejected such reasoning. *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *22 ("That 5G and AI technologies have military applications as well cannot be enough to support a conclusion that Xiaomi is a CCMC.").

The other three facts cited in the Decisional Memo concern commercial contracts that Luokung has publicly announced.  The third point in the Decisional Memo references an agreement between Luokung and the China National Geospatial Information Center ("CNGIC"), which is a government institution that operates a database of natural resources and geographic information.  Larsen-Bright Decl. Ex. H; Li Decl. ¶ 34.  The fourth point references an agreement between Luokung and Chiangjiang Yuntong Group Co. Ltd. ("Yuntong") (erroneously referred to in the Decisional Memo as "Yangtze River Yuntong Group Co. Ltd."), a company majority-owned by a municipal government in China.  Larsen-Bright Decl. Ex. H; Li Decl. ¶ 34.  Many Chinese companies in these sectors are State-owned enterprises, which make up a significant part of the Chinese economy.  Li Decl. ¶¶ 34.  Both of these agreements were arms-length cooperation agreements for the potential future provision of commercial services by Luokung.  *Id.*  The CNGIC agreement was a framework for Luokung to be hired for mapping and other services in support of potential smart government service, transportation, environmental protection, and urban planning projects, which have not occurred to date.  *Id*.  The Yuntong agreement was a framework for Luokung to be hired for website and mobile application services in support of a city's potential parking management and emergency management projects, which have not occurred to date.  *Id.* Neither of these agreements has anything to do with the Chinese military or defense.  Li Decl. ¶ 36.

The Decisional Memo does not suggest otherwise.  Instead, the Decisional Memo makes

the unsupported, conclusory, and false statement that these agreements constitute Luokung's "close affiliation" with the People's Republic of China and "potential affiliation with the surveillance capabilities of the PRC National Police."  Larsen-Bright Decl. Ex. H.  To begin with, neither agreement shows any "affiliation with" the Chinese government at all, based on the ordinary understanding of that phrase, for all of the reasons discussed above.  There is no suggestion that the agreements provided any type of ownership or control – direct, indirect, effective, or otherwise – and they did not.  Furthermore, "potential affiliation" is not one of the legal criteria for designation as a CCMC under Section 1237, and there is nothing in the Decisional Memo or otherwise suggesting that either of these agreements had anything remotely to do with surveillance or the PRC National Police (and they did not).  Li Decl. ¶¶ 34, 36.  There are no facts indicating that Luokung is effectively controlled by, or shares a common ownership or control with, these entities, and thus these commercial contracts cannot support the CCMC Designation. *See Xiaomi*, 2021 U.S. Dist. LEXIS, 46496, at *17-19.

The fifth and final point in the Decisional Memo concerns the fact that Luokung's subsidiary, EMG, announced a cooperation agreement with Huawei Investment & Holding Co., Ltd. ("Huawei"), which DoD has also designated as a CCMC.  Larsen-Bright Decl. Ex. H.  Huawei is a private multinational telecommunications and consumer electronics company with products that compete with companies like Apple, Samsung, and Xiaomi.  Li Decl. ¶ 35.  Nothing in Section 1237, however, defines the People's Liberation Army or Chinese government ministry to include a company designated as a CCMC.  Even if it did, DoD does not assert any facts that would show that Luokung is owned or controlled by, or affiliated with, Huawei, and in fact it is not.  Moreover, the fact that EMG entered a cooperation agreement with Huawei does not support the CCMC Designation.  Many other commercial companies, such as Siemens, Audi, and a variety of Chinese

companies, have likewise entered into cooperation agreements with Huawei.  *Id.*  And the agreement between Huawei and EMG concerned autonomous driving and internet-connected vehicles; it had nothing whatsoever to do with the Chinese military or defense, or whatever purported reason the DoD designated Huawei.  *Id.* ¶¶ 35-36.  Again, this cited fact has nothing to do with whether Luokung is actually a CCMC under the Section 1237 criteria.

Because Luokung is not, in fact, owned or controlled by, or affiliated with, any prohibited entity, and because the Decisional Memo does not contain any rationale that would support such a conclusion, the CCMC Designation is unsupported by substantial evidence and violates the APA.

> **d.      The CCMC Designation was made without observance of procedure required by law.**

The APA directs reviewing courts to "hold unlawful and set aside agency action" where that action was made "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  Section 1237 expressly requires the Secretary of Defense to consult with the Attorney General, the Director of Central Intelligence, and the Director of the Federal Bureau of Investigation when designating entities as CCMCs.  *See* NDAA FY99 § 1237(b)(3).

The courts do not assume that an agency has followed the statutorily required steps before taking agency action.  "When a statute specifically requires an agency to consult with an outside entity during the course of a rulemaking, the administrative record should contain some evidence that such a consultation took place."  *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 323 (D.D.C. 2016) (finding that the Treasury Department's Financial Crimes Enforcement Network failed to demonstrate that it performed the required consultations with other agencies as required, where the administrative record merely stated that such consultations had occurred).

There is no evidence that DoD engaged in the required consultation.  Defendants have not disclosed any information about any consultations that occurred prior to the designation.  There

were also anomalies in the processes associated with E.O. 13959 and its amendment that provide reason to doubt that all normal and appropriate procedures were followed. *See* Steele Decl. ¶¶ 9-47. Absent sufficient evidence in the record that the required consultations and processes occurred, Plaintiffs are likely to succeed on the merits on this basis as well (Count 2).

## 2. The CCMC Designation and the CCMC Prohibitions are *ultra vires*.

In addition to violating the APA, the CCMC Designation and the CCMC Prohibitions are *ultra vires* and are subject to this Court's review on that basis as well. *See Chamber of Com. of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority."). The CCMC Designation and CCMC Prohibitions are *ultra vires* for at least three reasons detailed above: (1) Luokung is not, and does not qualify as, a CCMC under the criteria set forth in Section 1237; (2) there is no evidence that DoD engaged in the required consultations with other agencies, as required under Section 1237; and (3) because Luokung does not qualify as a CCMC, the application of the CCMC Prohibitions as to Luokung exceeds the authority granted by E.O. 13959.

Section 1237 grants DoD the authority to designate entities as CCMCs only if they meet statutory requirements, and E.O. 13959 imposes prohibitions on trading in the securities of entities only to the extent that they are designated pursuant to Section 1237. Because Luokung does not satisfy the statutory conditions, the CCMC Designation and CCMC Prohibitions are *ultra vires*, and Luokung is likely to succeed on these bases as well (Counts 3 and 4).

## 3. The CCMC Designation and CCMC Prohibitions violate the due process clause of the Fifth Amendment.

The Constitution requires that individuals and entities be afforded due process of law before being deprived of property or liberty interests. The right to due process is fundamentally "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Kessler v.*

*Surface Transp. Bd.*, 635 F.3d 1, 6 (D.C. Cir. 2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  Alleged national security concerns do not vitiate the requirements of the Fifth Amendment.  *See, e.g.*, *Ralls Corp. v. Comm. on Foreign Inv.*, 758 F.3d 296, 319 (D.C. Cir. 2014).

Plaintiffs have been afforded *no* process here.  Plaintiffs learned of the CCMC Designation along with the rest of the public, when the Section 1237 List was published.  They only learned about the basis for the designation after filing this lawsuit.  Further, there is no established process to challenge the CCMC Designation; the normal OFAC delisting process – under which Plaintiffs still would not be able to obtain a decision before the CCMC Prohibitions go into effect – does not apply here, and no other process for relief has been established.  Because Plaintiffs will be deprived of their liberty and property interests, and have not been afforded due process to challenge that deprivation, Plaintiffs are likely to succeed on the merits of their claim that the CCMC Designation and CCMC Prohibitions violate their due process rights (Count 5).

### a.    Plaintiffs are protected by the Due Process Clause.

Both Luokung and the Individual Plaintiffs are protected by the Due Process Clause of the Fifth Amendment.  The Individual Plaintiffs Baomin Li and Raymond Weiman Bai are U.S. citizens.  Li Decl. ¶ 2; Bai Decl. ¶ 1.  As such, the Individual Plaintiffs are protected by the Due Process Clause, regardless of whether they are physically located in the United States or elsewhere.  *See, e.g.*, *Reid v. Covert*, 354 U.S. 1, 5-6 (1957) (plurality opinion).

Foreign corporations like Luokung are protected by the Due Process Clause where they have "come within the territory of the United States and established substantial connections with this country."  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990).  Defendants have conceded that Luokung operates in the United States.  Larsen-Bright Decl. Exs. D, E, and H.  This is consistent with the language of Section 1237, which concerns the identification of CCMCs "operating directly or indirectly in the United States or any of its territories and possessions."

NDAA FY99 § 1237(b)(1).  That is, Luokung's connection to the United States is a condition precedent to its designation as a CCMC.  That alone is enough to confer due process protections.

Furthermore, Luokung has substantial connections to the United States.  *See* Li Decl. ¶¶ 15-19.  It has thousands of U.S. shareholders, a key executive who conducts company business in the United States, and significant relationships with major U.S. companies, among myriad other connections.  *Id.*  These connections are more than sufficient to afford Luokung the protections of the Fifth Amendment.  *See*, *e.g.*, *Atamirzayeva v. United States*, 524 F.3d 1320, 1328 (Fed. Cir. 2008); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 203 (D.C. Cir. 2001).

> **b.      Plaintiffs were entitled to due process prior to the deprivation of their interests.**

"[T]he fundamental norm of due process clause jurisprudence requires that *before* the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing."  *Nat'l Council of Resistance of Iran*, 251 F.3d at 205 (emphasis added) (citing *Mathews*, 424 U.S. at 334-35).  In other words, it is not sufficient that Plaintiffs can pursue emergency relief from this Court; Plaintiffs were entitled to due process *before* the CCMC Designation was made, and are entitled to due process before the CCMC Prohibitions go into effect.  Defendants, however, have provided no process whatsoever.

To justify postponing a person's Constitutional right to notice and hearing until after the deprivation, Defendants must demonstrate that "(1) the deprivation was necessary to secure an important governmental interest; (2) there has been a special need for very prompt action; and (3) the party initiating the deprivation was a government official responsible for determining, under the standards, of a narrowly drawn statute, that it was necessary and justified in the particular interest."  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 76 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).  Defendants cannot make that showing.

Plaintiffs deny that there was any important governmental interest at issue here, or that the action here was necessary or justified under the circumstances, for all of the reasons set forth herein.  But, even if Defendants could satisfy those elements, there was no "special need for very prompt action."  The CCMC Designation was made based on a statute enacted two decades ago but never invoked until 2020, and the CCMC Prohibitions themselves make clear that there was no need for "very prompt action" in this case.  None of the prohibitions authorized by E.O. 13959 goes into effect until at least 60 days after the designation pursuant to Section 1237 is made.  This is not a case where, for instance, the Government must immediately freeze tainted assets to prevent them from being removed from the United States.  *Cf. Holy Land Found.*, 333 F.3d at 163-64 (finding that the government was justified in blocking or freezing assets prior to notice to prevent transfer of assets).  E.O. 13959 does not prevent the transfer of assets at all; instead, it prohibits purchases of securities by U.S. persons after a waiting period of at least 60 days, and directs divestment by U.S. persons within a year of the designation.  Furthermore, the government relisted Luokung two months after the original designation – and after this lawsuit had been commenced – but still provided Plaintiffs with no constitutional process.  There is no basis to conclude that there was a "special need for very prompt action" to start a clock that will eventually prohibit U.S. persons from trading in Luokung's securities, and therefore no basis for Defendants to deprive Plaintiffs of due process – or *any* process whatsoever – prior to the CCMC Designation and the CCMC Prohibitions.

> c.      **The CCMC Designation and CCMC Prohibitions will deprive Plaintiffs of liberty and property interests without due process of law.**

Without the Court's intervention, Luokung will be deprived of numerous liberty and property interests without due process of law, including by subjecting Luokung to severe stigma and damage to its reputation and business, and depriving Luokung of its existing and future

- 36 -

contractual relationships.  The Individual Plaintiffs will likewise be deprived, without due process, of their liberty and property interests, including as to the securities they currently hold and are entitled to hold in the future, and related personal and investment decisions.

The CCMC Designation subjects Luokung to severe, government-imposed stigma.  The U.S. government has declared that China is "exploit[ing] United States investors to finance the development and modernization" of the Chinese military through CCMCs, and that this purported exploitation constitutes a national emergency, because China is "developing and deploying weapons of mass destruction, advanced conventional weapons, and malicious cyber-enabled actions against the United States and its People."  Larsen-Bright Decl. Ex. B.  This stigmatizing declaration – which as to Luokung is absolutely false – is paired with an "alteration of legal status" sufficient to trigger due process protections.  *Paul v. Davis*, 424 U.S. 693, 708 (1976).

The U.S. government's declaration that Luokung is involved in a direct threat to the United States is both false and deeply damaging to Luokung's reputation and business.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.") (quotations omitted); *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993) (airline had liberty interest in avoiding damage to its reputation and business, and was entitled to due process prior to stigmatizing suspension); *Doe v. Dep't of Justice*, 753 F.2d 1092, 1104-05 (D.C. Cir. 1985) (plaintiff had liberty interest in professional reputation and was entitled to due process in connection with charges of unprofessional conduct and dishonesty); *Old Dominion Dairy Prod., Inc. v. Sec'y of Defense*, 631 F.2d 953, 955-956 (D.C. Cir. 1980) ("[W]hen the Government effectively bars a contractor from virtually all Government work due to charges that the contractor lacks honesty or integrity, due process requires that the contractor be given

- 37 -

notice of those charges as soon as possible and some opportunity to respond to the changes before adverse action is taken."). Luokung has already been informed by its shareholders and business partners that they are concerned about the damage to their own businesses and reputations resulting from their association with a company that has been designated as a CCMC, and two key customers have already terminated their contracts with Luokung as a result of the designation. Li Decl. ¶ 43.

Moreover, the CCMC Designation and associated CCMC Prohibitions deprive Luokung of its existing contractual relationships with U.S. persons holding Luokung shares, and prevent Luokung from forming future contracts with U.S. persons. The right to contract has been recognized as a liberty interest protected by the Due Process Clause for a century. *See, e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("Without doubt, [liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract.").

Each of the Individual Plaintiffs owns hundreds of thousands of Luokung shares, in which each Individual Plaintiff undeniably possesses property interests. Bai Decl. ¶ 3; Li Decl. ¶ 49. Each will be forced to divest these shares, and do so on the timeline set forth by Defendants rather than one of their own choosing. Their forced divestment, furthermore, will come at a time when all other U.S. persons are also required to divest, when the CCMC Prohibitions are inhibiting Luokung's ability to operate, and when Nasdaq has delisted Luokung's securities, depriving the Individual Plaintiffs of the only public trading market for Luokung shares. *Cf. Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (noting that even a temporary attachment triggers due process concerns because, among other things, it clouds title and impairs the ability to sell or alienate the property). Additionally, although each of the Individual Plaintiffs has a right, under Luokung's Incentive Plan, to receive stock and stock options – which forms an important part of their employment relationship with Luokung and compensation – they will be prohibited from

exercising those rights.  Bai Decl. ¶ 4; Li Decl. ¶ 50; *see Lynch v. United States*, 292 U.S. 571, 579 (1934) (holding that contract rights are property rights for Fifth Amendment purposes).

"Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 272 (2010) (quotations omitted). While the extent of the process required depends on a number of factors, *see Mathews*, 424 U.S. at 335, where, as here, there are no procedures that allow Plaintiffs to "rebut the factual premises underlying" the challenged action, that is "plainly not enough to satisfy due process." *Ralls Corp.*, 758 F.3d at 320.  Plaintiffs were never informed about the basis for the designation until after this lawsuit seeking emergency relief was filed, and have never had any opportunity to be heard. "[H]owever weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero – that is, the government is never relieved of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest." *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991).  Plaintiffs are likely to succeed on the merits of their Constitutional claim.

### 4.    Section 1237 is unconstitutionally vague.

It "is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  If "arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.*  A statute that "give[s] those enforcing [the] prohibition an impermissibly wide discretionary range in which to determine who is in violation" is therefore void.  *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1395 (D.C. Cir. 1990).

Section 1237 does not define the phrase "affiliated with."  Under its plain and ordinary meaning – which this Court applied in the *Xiaomi* case and should be applied here as well – there

is no basis to find that Luokung is "affiliated with" any prohibited entity identified in Section 1237. However, Defendants have publicly taken the position that "affiliated with" should be interpreted far more broadly than its common understanding, to include mere associations with a common purpose or shared characteristics. *See* Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 16) at 16, *Xiaomi Corp. v. U.S. Dep't of Def.*, Case No. 21-cv-00280 (D.D.C.).  This Court rejected Defendants' proposed definition in the *Xiaomi* case and should do so again here.  But to the extent that the statute is interpreted using Defendants' proposed definition, or any other definition that would accord Defendants effectively unfettered discretion in applying the statute, the undefined phrase in Section 1237 should be considered impermissibly vague.  Defendants' previously-stated position highlights both the basic ambiguity of the phrase, as recognized by prior courts considering similar terminology, and the fact that, due to its ambiguity, the phrase provides "an impermissibly wide discretionary range" for determining whether an entity is a CCMC.  *Cmty. for Creative Non-Violence*, 893 F.2d at 1395.

Multiple courts have found that "affiliated with" and similar language is impermissibly vague.  *See, e.g.*, *Pratt v. State*, 516 So. 2d 328, 328 (Fla. Dist. Ct. App. 1987) (rejecting bail condition instructing defendant "not to be affiliated with the legal profession" as unconstitutionally vague because it did not apprise him of which otherwise lawful acts were prohibited); *Child Evangelism Fellowship of Va. v. Williamsburg-James City Cty. Sch. Bd.*, No. 4:08cv4, 2008 U.S. Dist. LEXIS 61392, at *3, 14 (E.D. Va. Aug. 8, 2008) (granting injunction where school board's policy did not define what it meant to be "affiliated" with the school, and noting that proposed

definition of "affiliated with" to mean "in direct support of" was "incredibly vague").[11]

The decision in *Humanitarian Law Project v. Dep't of Treasury*, 463 F. Supp. 2d 1049 (C.D. Cal. 2006), is instructive.  There, the court addressed an executive order permitting the government to designate individuals as terrorists if they were "otherwise associated with" a designated terrorist group.  The court found that the "otherwise associated with" provision was improper because it contained "no definable criteria" and thus "on its face gives the Government unfettered discretion in enforcing it." *Id.* at 1070-71.  The court later reconsidered its finding, but only after the government issued new regulations defining the phrase at issue. *Humanitarian Law Project v. Dep't of Treasury*, 484 F. Supp. 2d 1099, 1105 (C.D. Cal. 2007).

Here, there is no definition of "affiliated with" and no definable criteria in the statute that could be applied to determine whether a person is affiliated with a prohibited entity.  Left to apply the language of Section 1237 without any such guidance, Defendants have sought to exercise an unconstitutional level of unfettered discretion.  Unless the plain and ordinary meaning of the phrase is used to interpret the statute, as in this Court's *Xiaomi* decision, the lack of any definition of "affiliated with" renders the statute unconstitutionally vague and unconstitutionally ripe for arbitrary and capricious agency action of the very type at issue here.  Plaintiffs are likely to succeed on the merits of their claim as to the impermissibly vague language in Section 1237 (Count 6).

---

[11] The Supreme Court addressed a similar issue in *Bridges v. Wixon*, 326 U.S. 135 (1945), in the context of determining whether an individual had an "affiliation" with the Communist Party. There, unlike here, the statute defined "affiliation," yet the Supreme Court still found the concept difficult to define and held that the lower court had construed it too broadly. *Id.* at 143 (holding that affiliation means more than cooperation); *cf. Inland Steel Co. v. NLRB*, 170 F.2d 247, 262 (7th Cir. 1948) (Major, J. dissenting) (regarding *Bridges*, "[t]he court's discussion is convincing that [the meaning of affiliation] would be quite beyond the reach of the ordinary citizen").

B.      **The Remaining Factors Support Injunctive Relief.**

1.      **The CCMC Designation and the CCMC Prohibitions have caused, and will continue to cause, irreparable harm to Plaintiffs.**

a.      **Luokung has been and will be irreparably harmed.**

Luokung has suffered, and will continue to suffer, irreparable harm unless the Court grants injunctive relief.  First, and fundamentally, deprivation of a Constitutional right constitutes, in itself, irreparable harm.  *See, e.g.*, *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (internal quotations omitted); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 104-05 (D.D.C. 2012) (holding that violation of Fifth Amendment right to due process constitutes irreparable harm).

As described above, Luokung is suffering, and will continue to suffer, irreparable harm to its business as a result of the CCMC Designation and the CCMC Prohibitions.  For example, as a company working in the technology industry, Luokung relies on a pool of technical professionals and engineers to create and refine innovative, high-performance products and services.  Li Decl. ¶ 44.  The CCMC Designation has damaged Luokung's ability to recruit highly skilled employees; by way of example, several potential recruits for senior technical positions have expressed reluctance to join the company because of the U.S. government's actions.  *Id.*  The "loss of talent and inability to 'recruit and retain employees to build – or even maintain – [a plaintiff's] business' can constitute irreparable harm."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*34 (quoting *TikTok*, 2020 U.S. Dist. LEXIS 177250, at \*8); *see also Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 43 (D.D.C. 2000) (movant may show irreparable harm with "economic loss [that] would significantly damage its business above and beyond a simple diminution in profits").

The CCMC Designation and the CCMC Prohibitions have also eroded market confidence

in Luokung's ability to operate.  Two key customers have terminated their contracts with Luokung due to the CCMC Designation, and Luokung has seen indications that some of its other business partners will sever their relationships with Luokung as well.  Li Decl. ¶¶ 42-43.  This kind of reputational damage will have significant long-term effects on Luokung's business prospects.  *Id.* In addition, Luokung's most important source of funding is the U.S. capital markets; deprivation of its access to those markets will require Luokung to put on hold or delay important projects and will lead to decreased market share.  *Id.* ¶ 39.  This, too, is irreparable harm.  *See Mylan Pharm.*, 81 F. Supp. 2d at 43; *see also Bayer HealthCare, LLC v. F.D.A.*, 942 F. Supp. 2d 17, 26 (D.D.C. 2013) (explaining that "diminished market share can constitute irreparable harm").

Moreover, once the CCMC Prohibitions go into effect, U.S. citizen employees will no longer be able to purchase or vest Luokung securities, and will be required to fully divest their holdings at the same time that all other U.S. persons are required to do so.  Li Decl. ¶ 45.  Shares and stock options form a major part of Luokung's employee compensation, pursuant to its Incentive Plan.  *Id.*  The importance of this Incentive Plan to Luokung's business is significant; indeed, Mr. Li, Luokung's Chief Technology Officer, will ultimately be compelled to leave the company should the CCMC Prohibitions go into effect, because he would no longer be able to receive his anticipated compensation in the form of equity.  *Id.* ¶ 50.  Each of these effects has a substantial impact on Luokung's ability to operate its business, and constitute irreparable harm. *See Mylan Pharm.*, 81 F. Supp. 2d at 43; *see also TikTok Inc. v. Trump*, No. 1:20-cv-02658, 2020 U.S. Dist. LEXIS 177250, at *11 (D.D.C. Sept. 27, 2020) (holding that the inability to recruit and retain employees to build or maintain business constitutes irreparable harm).

Finally, the delisting and/or halting of trading of Luokung's securities by Nasdaq – the only public trading market for Luokung's shares – as a direct result of the CCMC Designation will both

exacerbate the other harms incurred by Plaintiffs and constitute irreparable harm standing alone. *See*, *e.g.*, *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 267-68 (2d Cir. 1984) (affirming finding that, among other things, "delisting of securities generally is a serious loss of prestige and has a chilling effect on prospective buyers"); *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *31.

> **b.   The Individual Plaintiffs have been and will be irreparably harmed.**

If the CCMC Prohibitions go into effect, the Individual Plaintiffs Mr. Li and Mr. Bai will likewise suffer irreparable harm.  Each is a U.S. citizen, and each currently beneficially owns, and is entitled to receive in the future, in connection with Luokung's Incentive Plan, shares and stock options.  Bai Decl. ¶¶ 1, 3; Li Decl. ¶¶ 2, 45, 49-50.

Plaintiff Mr. Bai, Vice President of Luokung, is the beneficial owner of 540,000 ordinary shares of Luokung.  Bai Decl. ¶ 3.  Mr. Bai also is a beneficiary of Luokung's Incentive Plan.  *Id.* A significant amount of Mr. Bai's compensation consists of grants pursuant to the Incentive Plan, and the Incentive Plan was an important factor to Mr. Bai when deciding whether to join Luokung and in deciding to stay with Luokung.  *Id.*  Similarly, Plaintiff Mr. Li, Chief Technology Officer of Luokung, is the beneficial owner of 1,000,000 ordinary shares of Luokung.  Li Decl. ¶ 49.  He is a beneficiary of Luokung's Incentive Plan as well, which forms a significant portion of his compensation; the CCMC Prohibitions will dramatically impact his compensation by prohibiting future awards under the Incentive Plan.  *Id.* ¶ 50.

If the CCMC Prohibitions go into effect, each of the Individual Plaintiffs will be required to divest their shares within one year, and will be prohibited from purchasing or receiving shares, including through the Incentive Plan.  They will, moreover, be required to divest at a time when all other U.S. shareholders will be required to divest as well, resulting in depressed share prices. This will take place either before having an opportunity to be heard, in this litigation or otherwise,

or after Nasdaq has delisted and/or halted trading of Luokung securities.  Each will also lose the opportunity to benefit from future appreciation of their shares.  Such injuries, particularly where damages cannot be recovered due to sovereign immunity, constitute irreparable harm.  *See Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (recognizing that the APA does not waive sovereign immunity for damages); *see also Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *29-30 (unrecoverable economic losses may constitute irreparable harm).

### 2.    The balance of equities and the public interest support injunctive relief.

Where, as here, the party opposing the preliminary injunction is the U.S. government, the final two *Winter* elements – consideration of "harm to the opposing party" and "the public interest" – merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The Court must weigh the harm to Luokung if an injunction is not entered to the harm to Defendants if an injunction is entered.  *See Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

Absent immediate injunctive relief, Plaintiffs will suffer the serious, irreparable harms set forth above.  Defendants, by contrast, will not suffer any harm if the CCMC Prohibitions are enjoined pending resolution of Luokung's claims on the merits.[12]  While the executive is generally afforded deference in matters of national security and foreign affairs, there is no evidence that "weighty national security interests are actually implicated here."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *35.  Much like Xiaomi, the CCMC Designation of Luokung is based on "innocuous facts" drawn from Luokung's public announcements.  *Id*.  The government also allowed the CCMC designation to go "unused for almost twenty years," which "undermines the notion that the

---

[12] Courts have the authority to waive the requirement for a bond where, as here, there is no risk that Defendants will suffer monetary harm.  *See, e.g.*, *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).  This Court did not require any bond in the related *Xiaomi* decision, and no bond should be required here.

CCMC designation process is critical to maintaining this nation's security." *Id.* at \*36.

There is, moreover, "generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*36 (citing *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("[t]he public interest is served when administrative agencies comply with their obligations under the APA.")).  There is no harm to the government "from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quotations omitted).  Given the likelihood that Luokung will succeed on its claims, the public interest will be served by entry of the requested preliminary injunction.

## IV.   CONCLUSION

For the foregoing reasons, Luokung respectfully requests that the Court enter a preliminary injunction enjoining the enforcement of the CCMC Designation and the CCMC Prohibitions as to Luokung.[13]

---

[13] As previously explained in the parties' Joint Proposal Regarding Preliminary Injunction Schedule, see Dkt. No. 21, the legal restrictions being challenged by Plaintiffs will become effective by May 8, 2021, which, in practical terms, means that brokerages (operating on a T+2 settlement schedule) will be expected to stop processing orders prior to May 6, 2021.  Plaintiffs therefore respectfully request, and Defendants do not oppose, a decision on this motion no later than May 5, 2021.

DATED:  April 2, 2021                    Respectfully submitted,

                                         /s/ Creighton Magid
                                         Creighton Magid (D.C. Bar. No. 476961)
                                         Thomas Gorman (D.C. Bar No. 398734)
                                         DORSEY & WHITNEY LLP
                                         1401 New York Avenue, NW, Suite 900
                                         Washington, DC  20005
                                         Phone:  (202) 442-3555
                                         Fax: (202) 442-3199
                                         magid.chip@dorsey.com
                                         gorman.tom@dorsey.com

                                         Shawn Larsen-Bright (*Pro Hac Vice*)
                                         Benjamin D. Greenberg (*Pro Hac Vice*)
                                         DORSEY & WHITNEY LLP
                                         701 Fifth Avenue, Suite 6100
                                         Seattle, Washington  98104
                                         Telephone:  (206) 903-8800
                                         Fax:  (206) 903-8820
                                         larsen.bright.shawn@dorsey.com
                                         greenberg.ben@dorsey.com

                                         Kathryn A. Johnson (*Pro Hac Vice*)
                                         DORSEY & WHITNEY LLP
                                         50 South Sixth Street, Suite 1500
                                         Minneapolis, Minnesota  55402-1498
                                         Telephone:  (612) 492-6768
                                         Fax:  (612) 340-2868
                                         johnson.kate@dorsey.com

                                         Xichun (Catherine) Pan (*Pro Hac Vice*)
                                         DORSEY & WHITNEY LLP
                                         51 West 52nd Street
                                         New York, New York  10019-6119
                                         Telephone: (212) 415-9383
                                         Fax:  (646) 417-7279
                                         pan.catherine@dorsey.com

                                         *Attorneys for Plaintiffs*