**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUOKUNG TECHNOLOGY CORP. et al., <br><br> *Plaintiffs,* <br> v. <br><br> U.S. DEPARTMENT OF DEFENSE et al., <br><br> *Defendants*. | Case No. 1:21-cv-00583-RC |

**<u>REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................4

    A.    Defendants Present No Facts Supporting the CCMC Designation.........................4

    B.    The Court Should Apply Its Existing Definition of "Affiliated With.".................6

    C.    Defendants' Definition Renders Section 1237 Unconstitutionally Vague. ..........10

    D.    Defendants' Explanation for Designating Luokung Is Inadequate.......................12

    E.    Defendants Offer No Evidence That They Engaged in Required Consultations...................................................................................................14

    F.    The CCMC Designation and CCMC Prohibitions Are *Ultra Vires*. ...................14

    G.    Plaintiffs Are Likely to Succeed on their Due Process Claims. ..........................15

        1.    Luokung may challenge the CCMC Designation. ....................................16
        2.    Luokung has protected interests...............................................................17
        3.    The Individual Plaintiffs have protected interests. ...................................18

    H.    Plaintiffs Have Established Irreparable Harm. ....................................................20

    I.    The Balance of Equities and Public Interest Support Injunctive Relief. ..............24

III.  CONCLUSION....................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnhardt v. District of Columbia*,
   723 F. Supp. 2d 197 (D.D.C. 2010) .........................................................................7

*Cmty. for Creative Non-Violence v. Turner*,
   893 F.2d 1387 (D.C. Cir. 1990) ............................................................................11

*\*Connecticut v. Doehr*,
   501 U.S. 1 (1991) ...................................................................................................19

*FBME Bank Ltd. v. Lew*,
   209 F. Supp. 3d 299 (D.D.C. 2016) ......................................................................14

*GE v. Jackson*,
   595 F. Supp. 2d 8 (D.D.C. 2009) ..........................................................................19

*Hawaii v. Trump*,
   878 F.3d 662 (9th Cir. 2017), *rev'd on other grounds*, 128 S Ct. 2392 (2018) ......................15

*Kartseva v. Dep't of State*,
   37 F.3d 1524 (D.C. Cir. 1994) ..............................................................................17

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ..................................................................................24

*\*Mandel v. Assoc. Collection Serv. Inc.*,
   No. 13-02100, 2015 U.S. Dist. LEXIS 42957 (D. Ariz. Mar. 31, 2015) ..................................8

*Martin v. DOJ*,
   488 F.3d 446 (D.C. Cir. 2007) ................................................................................7

*Mills v. District of Columbia*,
   571 F.3d 1304 (D.C. Cir. 2009) ............................................................................23

*\*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................................12

*\*Nat'l Council of Resistance of Iran v. Dep't of State*,
   251 F.3d 192 (D.C. Cir. 2001) ..............................................................................15

*Nat'l Union Fire Ins. Co. v. Beelman Truck Co.*,
   203 F. Supp. 3d 312 (S.D.N.Y. 2016) .....................................................................8

*Norlin Corp. v. Rooney, Pace, Inc.*,
   744 F.2d 255 (2d Cir. 1984)..........................................................................................22

*O'Bannon v. Town Ct. Nursing Ctr.*,
   447 U.S. 773 (1980)......................................................................................................16

*Old Dominion Dairy Prod., Inc. v. Sec'y of Def.*,
   631 F.2d 953 (D.C. Cir. 1980).................................................................................16, 18

*Pharm. Research & Mfrs. of Am. v. United States HHS*,
   138 F. Supp. 3d 31 (D.D.C. 2015).................................................................................9

*Reeve Aleutian Airways, Inc. v. United States*,
   982 F.2d 594 (D.C. Cir. 1993)......................................................................................16

*Taylor v. Resolution Tr. Corp.*,
   56 F.3d 1497 (D.C. Cir. 1995), *amended*, 66 F.3d 1226 (D.C. Cir. 1995)....................17, 18

*Trifax Corp. v. District of Columbia*,
   314 F.3d 641 (D.C. Cir. 2003)......................................................................................17

*Van Beneden v. Al-Sanusi*,
   12 F. Supp. 3d 62 (D.D.C. 2014)...................................................................................7

*Xiaomi Corp. v. Dep't of Def.*,
   No. 1:21-cv-00280-RC, 2021 U.S. Dist. LEXIS 46496 (D.D.C. Mar. 12, 2021)............ *passim*

**Statutes**

NDAA FY99 § 1237 ........................................................................................... *passim*

Pub. L. No. 109-163 § 1211, as amended by Pub. L. No. 114-328 § 1296 ...................9

**Other Authorities**

48 C.F.R. § 225.003 ........................................................................................................9

48 C.F.R. § 252.225-7007.................................................................................................9

*Defense Federal Acquisition Regulation Supplement:  Foreign Commercial
   Satellite Services and Certain Items on the Commerce Control List (DFARS
   Case 2018-D020)*, 83 Fed. Reg. 66,066, 66,071 (Dec. 21, 2018) ...........................9

Executive Order 13959, 85 Fed. Reg. 73185 (Nov. 12, 2020) ............................ *passim*

*Excl. Religiously Aff. Sch. Charter-Sch. Grant Prgm.*,
   2020 OLC LEXIS 5 (O.L.C. Feb. 18, 2020)...................................................................8

https://worldpopulationreview.com/countries/cities/china/ .................................................................4

https://www.state.gov/u-s-china-joint-statement-addressing-the-climate-crisis/ ...........................5

## I.    INTRODUCTION

In *Xiaomi Corp. v. Dep't of Def.*, No. 1:21-cv-00280-RC, 2021 U.S. Dist. LEXIS 46496 (D.D.C. Mar. 12, 2021), a case involving the same issues presented here, this Court preliminarily enjoined Defendants' CCMC designation of Xiaomi.[1]  Xiaomi, like Luokung, is a publicly-traded company that was designated as a CCMC, on the same day as Luokung, based on its purported affiliation with the Chinese government.  In reviewing the designation, this Court held – among other rulings – that there was adequate proof that Defendants had violated the APA in multiple respects and that the designation (and related prohibitions) caused irreparable harm.

Based on a parallel record and evidence of harm, and the same conduct by Defendants, Plaintiffs here likewise seek relief from the corresponding CCMC Designation of Luokung.  The application of this Court's reasoning in *Xiaomi* to this case compels entry of Plaintiffs' requested injunction.  Recognizing this, Defendants, in their Opposition, argue that this Court should reconsider its prior decision on issues it has already resolved against them, and suggest that the factual record as to Luokung is so materially different from Xiaomi that it justifies a different result.  Neither argument has merit.

Defendants seek to reargue the meaning of the phrase "affiliated with" under Section 1237. In *Xiaomi*, this Court rejected the overbroad interpretation of the phrase proposed by Defendants and instead applied its ordinary, plain language meaning, *i.e.*, that one company is affiliated with another if it is effectively controlled by another or associated with others under common ownership or control.  2021 U.S. Dist. LEXIS 46496, at *17-19.  Defendants do not contest that, using this straightforward definition, Luokung is not a CCMC.  Instead, they argue that this Court should abandon its prior decision.  Defendants, however, did not timely move for reconsideration in

---

[1] Unless otherwise noted, all capitalized terms were defined in the Motion.  *See* Dkt. No. 26-1.

*Xiaomi* and should not be permitted a second bite at the apple here.  In any event, Defendants' argument that "affiliated with" should be interpreted expansively, so as to allow them essentially unfettered discretion, is just as unpersuasive now as it was when this Court first rejected it, and would render the statute unconstitutionally vague.

Defendants' attempt to distinguish their designation of Luokung from their designation of Xiaomi fares no better.  The Decisional Memo used to explain Defendants' decision here was in the same form and contained the same material errors, among others, that this Court has already found violated the APA.  That is sufficient, in itself, to establish Plaintiffs' likelihood of success on the merits.  The principal distinction drawn by Defendants to *Xiaomi* is that the Decisional Memo here mentioned *contracts* that Luokung had with entities affiliated with the Chinese government, whereas the memo for Xiaomi did not reference its contracts.  But the evidence before the Court is unrebutted that Luokung is a commercial (not military) company and that its contracts were for commercial (not military) services.  None of the cited contracts has anything remotely to do with the Chinese military, nor do any provide the counterparties with any ownership in, or any type of control over, Luokung.  Furthermore, there is no rational basis or substantial evidence to support the notion that Luokung could be designated as a CCMC simply because, like many other companies (including U.S. companies), it has *commercial contracts* with government entities.  The statute permits designation as a CCMC only if a company is owned or controlled by, or affiliated with, the Chinese military or a Chinese government ministry, or owned or controlled by an entity affiliated with the Chinese defense industrial base.  The facts in the record conclusively establish that Luokung does not satisfy that definition.  Defendants do not provide any evidence otherwise.

In an effort to bolster their flawed position, Defendants repeatedly make vague references to security concerns, such as suggesting that "grave national security interests" and the "security

of the country's citizenry" is at stake.  Opp. 2, 36.  But Defendants have offered no evidence that Luokung poses any type of threat, and it does not.  The *only* evidence in the record is that Luokung is an independent, publicly traded, commercial technology company; it is not a "military company" of any kind, and has no connection to the Chinese military or defense.  By repeating the idea that Luokung is some kind of threat, the Opposition only further perpetuates the damaging stigma that Defendants' false and unlawful CCMC Designation has inflicted on Luokung.

Defendants also argue that injunctive relief should be denied, despite their baseless designation of Luokung as a CCMC, because the harms being suffered by Plaintiffs should not be considered imminent or irreparable.  Again, this Court rejected Defendants' arguments in *Xiaomi*, finding that similar evidence of harm justified injunctive relief.  Defendants' other arguments about harm principally rely on mischaracterizations of the facts in the record.  For instance, Defendants argue that Luokung has offered only speculation about theoretical harm, while ignoring the evidence of actual harm – such as Luokung losing two of its key customers.  Defendants also downplay the impact on "certain investors" of Luokung.  Opp. 36.  But those investors are *thousands of U.S. shareholders* (including the Individual Plaintiffs) who are suffering the serious consequences of Defendants' misconduct without having had any notice or opportunity to be heard.  Those consequences are not delayed until March 2022, as Defendants assert.  The unrebutted facts show that Nasdaq, the only market for Luokung's securities, will delist Luokung by May 8, 2021, because of the CCMC Designation.  Without immediate relief, thousands of U.S. shareholders will be left with devalued securities and exposed to serious penalties because they will be unable to divest their shares.  Defendants ignore this reality.

Defendants' remaining arguments are equally unavailing.  For all the reasons set forth in the Motion and herein, a preliminary injunction should be entered.

## II.    ARGUMENT

### A.    Defendants Present No Facts Supporting the CCMC Designation.

It is telling that, despite emphasizing that Section 1237 is designed to address the threat posed by the Chinese "military-industrial complex" and Chinese efforts to "leverag[e] the fruits of civilian innovation for China's defense sector," Opp. 1, 4, Defendants, in their entire 37-page Opposition, devote only two paragraphs to DoD's alleged factual basis for designating Luokung as a CCMC. Critically, Defendants fail entirely to point to *any* evidence that Luokung "is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China" or "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China," as required under Section 1237.

Defendants merely repeat the assertions in the Decisional Memo about a few innocuous publicly-available facts about Luokung's business disclosed by Luokung itself. They assert that Luokung entered into cooperation agreements with a State-Owned Enterprise relating to "smart city initiatives" and with an institution under a government agency relating to "e-government, smart city, smart ecology, and smart agriculture." Opp. 15-16. Although Defendants, in their Opposition, characterize such arrangements as formal partnerships, they do not contest the fact that a "cooperation agreement" in China is nothing more than an agreement to continue discussions that may or may not lead to an actual business arrangement. *See* Li Decl. ¶ 32. Like a law firm being named panel counsel by an insurance company, a "cooperation agreement" is akin to pre-clearance, but does not guarantee that business will follow – and, in fact, no projects have resulted from these agreements. Nor do Defendants explain why providing commercial mapping or graphics software to assist a city with urban planning projects (China has over 160 cities with populations over 1 million people, *see* https://worldpopulationreview.com/countries/cities/china) or to support smart ecology and smart agriculture to increase sustainability (in furtherance of a

goal of the United States, *see* https://www.state.gov/u-s-china-joint-statement-addressing-the-climate-crisis/), has any connection to the Chinese military or defense.  None of these facts even hints at, much less establishes, ownership or control by, or affiliation with, the People's Liberation Army or a ministry of the government of the People's Republic of China, or ownership or control by an entity affiliated with the defense industrial base of the People's Republic of China.  Nor do Defendants provide any substantiation for the (false) assertion that Luokung's "cooperation agreement" with a city showed "potential affiliation with the surveillance capabilities of the PRC National Police."  (Regardless, "potential affiliation" is not part of the statute.)  Nor do Defendants explain why a "cooperation agreement" with private company Huawei Investment & Holding, Ltd. ("Huawei") concerning autonomous driving supports a CCMC designation; they claim that Huawei is a CCMC, but doing business with a CCMC is not a basis for a CCMC designation, and there is no evidence that providing map software to commercial developers of autonomous vehicles is of any importance whatsoever to, or has any connection with, the Chinese military.

Defendants next attempt to bolster DoD's conclusion that Luokung's "cooperation agreement" with another private company, LandSpace Technology Corporation, Ltd. ("Land Space"), somehow supports a CCMC designation by claiming that "DoD found that Luokung is investing heavily in space technologies, such as 'measurement and control systems for rockets, satellites and earth stations,' and in Artificial Intelligence (AI) and Autonomous Systems."  Opp. 17.  But the Decisional Memo does not say that Luokung is "investing heavily in space technologies;" it merely references Luokung's announcement of its "cooperation agreement" with Land Space, which provides that Luokung would be treated as a potential business partner for *data management services* if Land Space were to obtain any commercial launch orders (which it has yet to do).  *See* Li Decl. ¶ 32.

Nor do Defendants proffer any support for DoD's conclusion that Luokung's selection by Ford Motor Company to supply maps for autonomous cars or its use of artificial intelligence – a more than $300 billion category that permeates businesses and homes across the world – supports a CCMC designation.  The Opposition includes not a single sentence explaining how any of these commercial relationships supports a finding that Luokung in fact satisfies the statutory requirement of being "owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China" or "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China."

In short, Defendants devote considerable space to setting forth the geopolitical and military rivalry between the United States and China, but offer nothing to explain how Luokung fits the actual statutory definition of a CCMC, and it does not.

**B.      The Court Should Apply Its Existing Definition of "Affiliated With."**

Because the evidence is clear that Luokung does not satisfy the statutory requirement for being designated as a CCMC, Defendants urge this Court to expand the scope of the statute beyond its plain language to include an extremely broad interpretation of the phrase "affiliated with." However, in *Xiaomi*, this Court – after thorough briefing and argument – rejected the overbroad definition of "affiliated with" advanced by Defendants, finding that its plain meaning under Section 1237 is "a company effectively controlled by another or associated with others under common ownership or control."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *17-19.  This Court's ruling was well-reasoned and consistent with the phrase's common understanding, as evidenced by federal courts adopting this definition as the "plain and ordinary meaning," as well as support in numerous statutes, regulations, and other authorities.  *Id.* at *17-18 (citing authority).  This Court's prior ruling on the identical issue presented here should be applied here as well.

Defendants' attempt to relitigate this definitional issue here – after litigating and losing on

the identical issue in *Xiaomi* recently – is unpersuasive and should be summarily denied.  As an initial matter, Defendants should be collaterally estopped from relitigating this issue.  The three elements of collateral estoppel are all readily met here, as (1) the same issue was contested by the parties for judicial determination in *Xiaomi*; (2) the issue was determined by this Court; and (3) preclusion will not work a basic unfairness to Defendants.[2]  *See Martin v. DOJ*, 488 F.3d 446, 454 (D.C. Cir. 2007).  While ordinarily issues litigated in the context of a preliminary injunction do not form the basis of collateral estoppel, the doctrine may still apply when the prior ruling is "sufficiently firm to remove any compelling reason to permit relitigation."  *Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 208 (D.D.C. 2010) (internal quotations omitted).  Here, where Defendants have very recently and vigorously litigated in this Court this identical issue, there is "no really good reason for permitting it to be litigated again."  *Id.*  In fact, reconsidering the definition of "affiliated with" here would require the Court to reconsider its prior order in *Xiaomi*.  There is no justification for relitigating this already settled issue.

In their Opposition, Defendants repeat the arguments they made before.  Just as in their briefing in *Xiaomi*, Defendants here argue that "affiliated with" should be interpreted expansively to encompass all "associations on the basis of a common purpose or of shared characteristics," and that the settled definition would render "superfluous the statute's separate criteria concerning ownership and control" and "fail to address the threat posed by Military-Civil Fusion that Congress was attempting to address."  Opp. 18, 20.  This Court has already considered and properly rejected these arguments, and they will not be discussed further.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *18 (explaining that Defendants' definition has been rejected as "unpersuasive and

---

[2] The fact that Plaintiffs are not parties in *Xiaomi* does not preclude the application of collateral estoppel against Defendants, who *are* parties in that case.  *See, e.g.*, *Van Beneden v. Al-Sanusi*, 12 F. Supp. 3d 62, 70 (D.D.C. 2014).

contradicted by the weight of the authorities") (citations and quotations omitted).

Defendants also offer three new arguments in support of their definition of "affiliated with." Defendants could have been presented these points in *Xiaomi* but chose not to, and should not be permitted a second chance here. In any event, Defendants' new arguments are unavailing.

Defendants first argue that this Court should reverse its prior decision because the authority relied upon by this Court "concerned the definition of affiliate, *i.e.*, the noun form of the word, not the adjectival phrase," and that the adjectival phrase should be interpreted more broadly. Opp. 19 (emphasis omitted). This argument is unsupported by any legal authority and is fundamentally illogical – the grammatical form of a word does not change its meaning. It has also been soundly rejected. As one federal court explained:

> Defendant argues that the definition of the term "affiliate" is not instructive here because Defendant's letter uses the phrase "Affiliated with." . . . . Defendant's argument that the definition of "affiliate" does not relate to the phrase "Affiliated with" is without merit. The terms "affiliate" and "affiliated" are different forms of the same word, and the substantive meaning of the terms is the same.

*Mandel v. Assoc. Collection Serv. Inc.*, No. 13-02100, 2015 U.S. Dist. LEXIS 42957, at *10 (D. Ariz. Mar. 31, 2015). That the noun and adjectival forms of the word have the same meaning is further evidenced by the fact that pertinent authorities regularly use the different forms of the word interchangeably. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 320 (S.D.N.Y. 2016) (citing multiple SEC rules stating that an "***affiliate of, or person affiliated with***, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified") (emphasis added). Further, the opinion of the DOJ's Office of Legal Counsel that this Court cited in *Xiaomi* used the adjectival form (not the noun form) and its definition aligns with this Court's prior ruling. *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *18 (citing *Excl.*

*Religiously Aff. Sch. Charter-Sch. Grant Prgm.*, 2020 OLC LEXIS 5, at *2 (O.L.C. Feb. 18, 2020)).  The fact that there are two forms of the word is a distinction without a difference.

Next, Defendants cite to a DoD Defense Acquisition Regulation, as if it were instructive.  But nothing in the cited acquisition regulation is contrary to this Court's prior decision.  The regulation implements an entirely different statute with an entirely different purpose (Section 1211 of the FY 2006 NDAA),[3] and defines the concept of a CCMC under that statute in a manner that is plainly inconsistent with Section 1237.  As this Court has previously stated, "it is elementary that no deference is due to agency interpretations at odds with the plain language of the statute itself."  *Pharm. Research & Mfrs. of Am. v. United States HHS*, 138 F. Supp. 3d 31, 48 (D.D.C. 2015) (quotations omitted).  That is the case here.  The cited regulation does not even use the term "affiliated with."  Rather, for the limited purposes of federal acquisition under a different statute, the regulation encompasses any company that is "part of the commercial or defense industrial base" of China.  48 C.F.R. § 225.003.  This is by its terms inconsistent with Section 1237, which does not encompass the "commercial" base of China, does not include the concept of "part of," and further includes specific additional requirements.  It is readily apparent that the definition in

---

[3] Section 1211, as amended, prohibits the Secretary of Defense from procuring goods and services on the munitions list of the International Trafficking in Arms Regulations (ITAR) and certain defense-related items that are subject to the U.S. Export Administration Regulations (EAR) from CCMCs.  Pub. L. No. 109-163 § 1211, as amended by Pub. L. No. 114-328 § 1296.  The prohibition is incorporated into contracts with DoD contractors.  48 C.F.R. § 252.225-7007.  Under Section 1211, "[t]he concern is with the integrity of the DoD supply chain and to prevent insertion of malicious items from China into U.S. Weapons platforms, information technology systems, and other areas, presenting a threat to [U.S.] warfighters and their ability to defend U.S. national security."  *Defense Federal Acquisition Regulation Supplement:  Foreign Commercial Satellite Services and Certain Items on the Commerce Control List (DFARS Case 2018-D020)*, 83 Fed. Reg. 66,066, 66,071 (Dec. 21, 2018).  Section 1211 thus has a very different purpose than does Section 1237, which identifies CCMCs against which the President was permitted to issue IEEPA sanctions.  These different purposes explain why there is a broader definition used under Section 1211.

the regulation cited by Defendants could not be applied here, as it would give the President essentially unfettered discretion to sanction virtually every company in China under IEEPA. Section 1237 does not remotely support such a reading.  To the contrary, as this Court recognized in *Xiaomi*, "crediting Defendants' definition could imbue Section 1237's use of affiliate with a meaning so broad that it is inconsistent with the statute's accompanying words, thus giving unintended breadth to the Acts of Congress."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *18 (quotations and brackets omitted).

Finally, Defendants contend that "legislative history" supports their view.  Opp. 20.  In support of this contention, Defendants cite an excerpt of the Report from a House Committee.  But nothing in that Report supports Defendants' position.  To the contrary, the Report explains that the CCMC definition was years ago expanded to capture companies "owned or operated" by the Chinese government or entities in its defense industrial base, to ensure that the statute did not exclude such "firms engaged in Chinese military modernization."  H. Rep. No. 108-491, Rpt. of the Comm. on Armed Services, House of Representatives, on H.R. 4200, at 366.  Here, Luokung is not owned or operated by the Chinese government, military, or any entity affiliated with its defense industrial base, nor is Luokung in any way involved in military modernization.  The Report cited by Defendants only further supports this Court's prior decision and Plaintiffs' position here.

Defendants have failed to establish a basis for overturning this Court's prior ruling on the meaning of "affiliated with" under Section 1237.  The Court should apply the same definition here.

### C.     Defendants' Definition Renders Section 1237 Unconstitutionally Vague.

Defendants do not substantively address Plaintiffs' argument that Section 1237 is unconstitutionally vague as to the term "affiliated with," relegating their response to a footnote. Opp. 29.  Defendants make two abbreviated and flawed arguments in that footnote.  First, they assert that Plaintiffs have not established that they have liberty or property interests affording them

constitutional protections.  Defendants, however, have *conceded* that the Individual Plaintiffs have property interests affected by the CCMC Prohibitions.  *Id.*  That concession alone is sufficient to eviscerate Defendants' argument, but Luokung has also demonstrated that it has affected liberty and property interests as well.  *See* Motion at 34-39.

Second, Defendants argue that the term "affiliated with" is clear, and that its plain meaning encompasses the expansive scope they are urging be applied.  Defendants essentially argue that the phrase is so clear that the Court should, for purposes of this case, adopt a definition that it recently *rejected*.  Contrary to their argument, moreover, Defendants' own definition of "affiliated with" is indefinite and has evolved as they have attempted to justify the unlawful CCMC Designation.  The dictionary definitions advanced by Defendants include associations "on the basis of a common purpose or of shared characteristics" and an entity that is "closely associated with another typically in a dependent or subordinate position," which definitions are themselves improperly vague. Opp. 18-19. Defendants' Opposition also makes reference to an extraordinarily broad federal acquisition regulation, as well as various other suggestions as to what "affiliated with" might mean.  Defendants variously define "affiliated with" as encompassing a "close relationship to PRC affiliated entities," "strategic partnerships [with] PRC-affiliated entities," and "a working, formalized relationship . . . far beyond what the record reflected in *Xiaomi*." *Id.* at 15-18.  None of these definitions has any reasonable scope or limitation, nor are they tied to the statute's language.

To be clear, Plaintiffs believe that the Court should interpret "affiliated with" according to its plain language meaning, applying the definition set forth in *Xiaomi*.  However, if the language is to be interpreted as urged by Defendants, to accord them essentially unfettered discretion, then the statute would be unconstitutionally vague.  *See Cmty. for Creative Non-Violence v. Turner*,

893 F.2d 1387, 1395 (D.C. Cir. 1990) (holding that a statute that "give[s] those enforcing [the] prohibition an impermissibly wide discretionary range in which to determine who is in violation" is void).  Should the Court be persuaded by Defendants' interpretive arguments that it previously rejected, that very fact would itself evidence the unconstitutional vagueness of Section 1237.

### D.   Defendants' Explanation for Designating Luokung Is Inadequate.

To satisfy the APA, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotations omitted).  As was the case in *Xiaomi*, the Decisional Memo here misstates the statutory criteria, identifies only innocuous public facts about Luokung, and utterly fails to provide any connection between the cited facts and the conclusion that Luokung is a CCMC.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *14-15.  This Court held in *Xiaomi* that Defendants violated the APA in their deficient explanation, and the same is true here.

Defendants' carelessness as to Luokung far exceeds what was present in *Xiaomi*.  In addition to the errors previously identified by the Court, Defendants also (a) made two errors in connection with listing Luokung's name on its Section 1237 List; (b) began the Decisional Memo with a "summary" of Luokung's business that was inaccurate and years out of date, even though current information is readily available as Luokung is a public company; and (c) misnamed one of the entities mentioned in the Decisional Memo with which Luokung contracted.  Li Decl. ¶¶ 34, 36; Dkt. Nos. 26-21.  Defendants do not dispute any of this.  This lack of care is consistent with the opinion set forth in the declaration of former senior Treasury Department official and economic sanctions expert, Charles Steele, that the process surrounding E.O. 13959 was highly unusual and appears to have been rushed and haphazard as the change in administrations approached.  Steele Decl. ¶¶ 5, 9-47.  Defendants make no attempt to respond to Mr. Steele's declaration, and thus

seemingly acknowledge the grave flaws in their administrative process.

Defendants' Opposition only highlights further faults in their administrative process by, among other things (a) trying to bolster the Decisional Memo with citation to largely irrelevant reports that were not cited in the Decisional Memo or "before the decision-maker" (Opp. 17); (b) suggesting varying definitions of "affiliated with" that contain no limiting principle, and failing to articulate in either the Decisional Memo or their Opposition what definition was actually utilized by Defendants when making the CCMC Designation; and (c) acknowledging the "thin[] record" relating to the DoD's decision to designate Xiaomi (Opp. 21), a designation that was made on the same day as the initial, misspelled designation of Luokung.

Beyond Defendants' many errors, the Decisional Memo suffers from the critical flaw that it does not provide any reasoned rationale. In *Xiaomi*, such conclusory analysis allowed this Court to "declare with confidence that the agency action was arbitrary and capricious." *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *14-15. This Court should do so here as well. Defendants' contention that the conclusion reached in the Decisional Memo *implies* that a proper analysis took place is unavailing; a court "may not supply" reasoning that is not there. *State Farm*, 463 U.S. at 43. Nor can Defendants fill in the gaps of the agency decision-making process through *post hoc* lawyer argument in briefing; to do so would eviscerate the agency's "most critical" step of "connecting the facts to the conclusion." *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *14-15.

Even if Defendants were allowed to have the Court infer reasoning that is not there – and the law requires otherwise – Defendants' explanation still falls flat. As discussed above, the five facts cited in the Decisional Memo do not tie to the statute. They reference Luokung's connection to general business sectors and commercial contracts. None shows any ownership or control by, or affiliation with, the Chinese government or military, or ownership or control by any entity

affiliated with the Chinese defense industrial base.  Plaintiffs are therefore likely to succeed on their APA claim.

> ### E.   Defendants Offer No Evidence That They Engaged in Required Consultations.

Section 1237 requires the Secretary of Defense to consult with the Attorney General, the Director of Central Intelligence, and the Director of the Federal Bureau of Investigation when designating entities as CCMCs.  *See* NDAA FY99 § 1237(b)(3).  "When a statute specifically requires an agency to consult with an outside entity during the course of a rulemaking, the administrative record should contain some evidence that such a consultation took place."  *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 323 (D.D.C. 2016).  Despite this requirement, Defendants have not submitted any evidence that DoD engaged in the required consultations.

Instead, Defendants meekly contend in a footnote that this claim "is premature in the preliminary injunction context, before the agency has produced the full administrative record."  Opp. 22.  This is specious.  Defendants control the administrative record, and have had over seven weeks since the filing of this Action to produce evidence that appropriate consultation occurred in order to meet their burden.  Defendants have failed to do so, and cannot hide behind their own delays as a basis to avoid an adverse ruling at the preliminary injunction stage.  Given the lack of any evidence in the record that the required consultations and processes occurred, the Court should find that Plaintiffs are likely to succeed on the merits of their APA claim on this basis as well.[4]

> ### F.   The CCMC Designation and CCMC Prohibitions Are *Ultra Vires*.

As detailed in Plaintiffs' Motion, the CCMC Designation and CCMC Prohibitions are also

---

[4] Notably, Defendants have now produced the administrative record in the *Xiaomi* case, and their public description of the same does not indicate that there is any documentation of consultation with respect to the designation of Xiaomi.  *Xiaomi.*, No. 1:21-cv-00280-RC, Dkt. Nos. 31, 31-1. As both entities were designated on the same day, this is further indicia that Defendants did not engage in the required consultation process with respect to the designation of Luokung.

*ultra vires,* for at least three reasons:  (1) Luokung is not a CCMC under the criteria set forth in Section 1237; (2) there is no evidence that DoD engaged in the required consultations with other agencies, as required under Section 1237; and (3) because Luokung does not qualify as a CCMC, the CCMC Prohibitions as to Luokung exceed the authority granted by E.O. 13959.  Defendants fail to address the *ultra vires* argument in their Opposition, and have not submitted any evidence to dispute it.  Accordingly, the Court should find that Luokung is likely to succeed on its *ultra vires* argument as well.[5]

### G.    Plaintiffs Are Likely to Succeed on their Due Process Claims.

To succeed on the merits of their due process claims, Plaintiffs must show that (1) they are protected by the Due Process Clause; (2) they have a protected liberty or property interest; and (3) they have been deprived of that liberty or property interest without due process of law.  *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 200-01 (D.C. Cir. 2001).  Defendants concede the first element.  Opp. 23.  Defendants do not even address the third element, nor could they reasonably argue that Plaintiffs received due process; the simple fact is that Plaintiffs received *no process* whatsoever.  Plaintiffs did not receive advance notice of the CCMC Designation; instead they learned of it through public reporting about the announcement.  Li Decl. ¶ 21.  Plaintiffs also did not have any opportunity to be heard to challenge the designation, and there remains no administrative procedure to do so.  Steele Decl. ¶¶ 36-38; Ward Decl. ¶ 6.

Instead, Defendants focus entirely on the second element.  They argue (1) that Luokung has no right to challenge the CCMC Designation; and (2) that Plaintiffs have not identified an

---

[5] In a footnote, Defendants argue that Plaintiffs' APA claim against the President should be rejected because the President is not subject to the APA.  Opp. 21.  *But Plaintiffs have not asserted any such claim.*  Plaintiffs have asserted an *ultra vires* claim against the President (Count 4), which courts have recognized is viable.  *See, e.g.*, *Hawaii v. Trump*, 878 F.3d 662, 682-83 (9th Cir. 2017), *rev'd on other grounds*, 128 S Ct. 2392 (2018).

interest sufficient to entitle them to preliminary injunctive relief.  Both of these arguments fail.

### 1.   Luokung may challenge the CCMC Designation.

First, Defendants argue that Luokung lacks standing to challenge, on due process grounds, its designation as a CCMC because they claim it is affected only "indirectly or incidentally."  Opp. 24.  Defendants rely on *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 775-76 (1980), in which the Supreme Court held that residents of a nursing home whose care was funded by Medicare did not have a right to participate in hearings regarding the decertification of that nursing home's Medicare provider agreement.  In that case, the resident plaintiffs argued that they had property rights to remain in the home of their choice, and that transferring them from their home would be "tantamount to a deprivation of life or liberty."  *Id.* at 784.  The Supreme Court held that they did not have the right to "enter an unqualified home and demand a hearing to certify it" or to "continue to receive benefits for care in a home that has been decertified."  *Id.* at 785.

Luokung is in no way similarly situated to the plaintiffs in *O'Bannon*.  In advancing this argument, Defendants ignore that *Luokung itself* was the party designated as a CCMC, which has resulted in severe reputational and other harm *to Luokung*.  *See Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *26 ("It is almost unquestionable that Xiaomi's CCMC designation has damaged its reputational standing with corporate customers and business partners.").  While the prohibition on U.S. persons trading in Luokung securities pursuant to E.O. 13959 is *one* effect of the designation, that does not change the fact that Luokung is the designation's subject, and has suffered harmful stigma as a result.  *See* Li Decl. ¶ 43 (customers have terminated relationships with Luokung due to the CCMC Designation).  The law provides that an entity subject to a stigmatizing designation has – if all of the elements are met, as they are here – grounds to assert due process claims.  *See, e.g.*, *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993); *Old Dominion Dairy Prod., Inc. v. Sec'y of Def.*, 631 F.2d 953, 955-956 (D.C. Cir. 1980).

###### 2.      Luokung has protected interests.

Defendants acknowledge that Luokung has a liberty interest in pursuing its business "free from unreasonable interference," but argue that the CCMC Designation and CCMC Prohibitions do not have a sufficiently severe effect on Luokung to constitute deprivation of that interest.  Opp. 25.  Defendants misapprehend both the relevant facts and the relevant law.

A party's liberty interest in conducting its business is implicated where the government either takes formal action barring its business activities or takes informal action that both stigmatizes and "broadly precludes" those activities.  *See, e.g.*, *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643-645 (D.C. Cir. 2003) (holding that "formal debarment" and "broad preclusion" both implicate liberty interests); *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended*, 66 F.3d 1226 (liberty interests implicated where government action is "either sufficiently formal or sufficiently broad").  Defendants do not argue that there has not been a change in Luokung's legal status; they simply argue that the effect of that change in status is not sufficiently severe to trigger due process protections.  They are wrong.

There can be no question that the CCMC Designation concretely altered Luokung's legal status.  As a result of the CCMC Designation, Luokung will be unable, as of May 8, 2021, to sell its securities to U.S. persons, participate in the U.S. capital markets, or enter into employment contracts with U.S. persons that include the award of Luokung stock or options as part of a compensation package – all of which are crucial to Luokung's business.  *See* Li Decl. ¶¶ 37-44. These prohibitions are backed by severe civil and criminal penalties.  These facts implicate Luokung's liberty interests.  *See Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994) (prohibition from all contracts, or from "a predetermined class of contracts or jobs . . . will have effected a change in [plaintiff's] status sufficient to implicate a liberty interest, with attendant needs for due process protections").

Further, the designation's stigmatization of Luokung and broad preclusion of Luokung's business activities also trigger due process protections. Defendants do not dispute that the CCMC Designation is stigmatizing, nor could they; the U.S. government has declared (falsely) that Luokung is part of a scheme to exploit American investors to finance attacks on the United States. *Cf. Old Dominion*, 631 F.2d at 964 (charge of dishonesty is stigmatizing). The only question is whether Luokung will be sufficiently precluded from engaging in its chosen business to trigger due process protections. It will.

Defendants argue that Luokung must show *total* preclusion from its chosen business to trigger due process protections, relying largely on out-of-circuit cases. However, D.C. Circuit law does not require total preclusion; instead, the standard is broad preclusion. *See*, *e.g.*, *Taylor*, 56 F.3d at 1506 (government action must have "*seriously affected*, if not destroyed," ability to pursue profession) (emphasis added); *Old Dominion*, 631 F.3d at 963-64 (preclusion from selling dairy products to government sufficient to implicate rights, without any finding that company would be unable to sell to private customers). Here, the record evidences that Luokung's ability to carry out its chosen business has already been, and will continue to be, seriously affected. *See* Li Decl. ¶¶ 37-50. Any one of the myriad of irreparable harms being suffered by Luokung would broadly preclude its business activities; taken together, the effects of the CCMC Designation and associated stigma are devastating to Luokung's ability to develop and sell its products and services.

### 3.     The Individual Plaintiffs have protected interests.

Defendants acknowledge that the Individual Plaintiffs have property interests implicated by the requirement that they sell their Luokung securities, but argue that this does not constitute an immediate injury justifying a preliminary injunction. This argument fails for two reasons.

First, Defendants' argument improperly *conflates* the requirement that the Individual Plaintiffs make a showing that they have been deprived of a liberty or property interest without

due process with the separate requirement that the Individual Plaintiffs demonstrate irreparable harm.  Having conceded that the Individual Plaintiffs have a property interest, and having failed to advance any argument that they received due process, Defendants have effectively conceded that the Individual Plaintiffs are, at minimum, likely to succeed on the merits of their due process claims.  The cases Defendants cite do not hold otherwise.  And, as discussed further below, the Individual Plaintiffs *will* be irreparably harmed if the CCMC Prohibitions go into effect.

Second, Defendants are incorrect in arguing that the Individual Plaintiffs' property interests will not be impaired until March 2022.  While the legal *deadline* to divest is March 9, 2022, the Individual Plaintiffs' interests are implicated imminently.  As of no later than May 8, 2021, there will be no public market on which the Individual Plaintiffs can sell their shares because Nasdaq – the only public market for Luokung securities – will have delisted Luokung.  Li Decl. ¶ 47.  The Individual Plaintiffs (like all of Luokung's thousands of U.S. shareholders) must therefore either divest prior to Nasdaq's imminent delisting or face the prospect of trying to divest at a time when Luokung faces the full brunt of the CCMC Prohibitions and attendant downward pressures on its stock price, when all U.S. persons are similarly required to divest their devalued shares, and when there is no stock exchange on which to engage in divestiture transactions.  Li Decl. ¶ 50; Bai Decl. ¶ 4.  The Individual Plaintiffs cannot simply hold on to their securities until March 9, 2022, in the hope that this case will be resolved.  The value of their holdings will plummet immediately and will become wholly illiquid; their property interests are implicated *now*.  *See, e.g.*, *GE v. Jackson*, 595 F. Supp. 2d 8, 21 (D.D.C. 2009) (rejecting argument that diminution in value does not give rise to due process claim); *Connecticut v. Doehr*, 501 U.S. 1, 11-12 (1991) (government action that clouded title and impaired ability to sell property sufficient to merit due process protection).  For these same reasons, Defendants' request, in the alternative, that the Court enjoin only the

obligation of current shareholders to divest is insufficient; such an injunction would not prevent the irreparable harms at issue and would leave Plaintiffs in the same untenable position.

Defendants concede that the Individual Plaintiffs have a property interest implicated by the CCMC Prohibitions, and do not argue that the Individual Plaintiffs received due process. The Court's inquiry regarding likelihood of success on the merits ends there; however, the Individual Plaintiffs have also established that their property rights are impaired *now* and that, for purposes of the preliminary injunction analysis, they will suffer irreparable harm absent injunctive relief.

### H.   Plaintiffs Have Established Irreparable Harm.

Plaintiffs have submitted ample and unrebutted evidence that they are suffering, and will continue to suffer, irreparable harm as a result of Defendants' misconduct. *See* Li Decl. ¶¶ 37-50; Bai Decl. ¶ 4. Without the Court's intervention, the CCMC Designation and CCMC Prohibitions will cut Luokung off from the U.S. capital markets, interfere substantially with its business and contractual relationships, and cause other irreparable harm to the company's financial condition, operations, standing, and reputation. Likewise, Luokung's thousands of U.S. shareholders, including the Individual Plaintiffs, will be deprived of the ability to acquire, freely transact in, or otherwise make their own investment decisions concerning their Luokung securities.

Defendants try to avoid this conclusion by conveniently ignoring the concrete evidence of harm that has been suffered, and will continue to be suffered, by Plaintiffs. For example, Defendants assert that Luokung's identified harms are "nothing more than theoretical outcomes." Opp. 30. They support this claim by citing the *second half of a sentence* from Plaintiffs' Motion, which stated that Luokung "has seen some indications that some of its other business partners will sever their relationships." *Id.* Defendants deceptively did not include the first half of that sentence, which stated that "[t]wo key customers have terminated their contracts with Luokung due to the CCMC Designation." Motion at 43. Plaintiffs have established that the loss of these two customer

relationships alone "will cause more than $10 million dollars in lost revenue in 2021."  Li Decl.

¶ 43.  This loss – which represents a significant portion of Luokung's overall annual revenue – is

far from theoretical, and is just one example of the concrete harm being suffered by Plaintiffs.

Defendants made this same "theoretical outcomes" argument in *Xiaomi*, after Xiaomi had

presented evidence of reputational and economic harm similar to that presented by Luokung.  This

Court rejected Defendants' position and held that Xiaomi had established irreparable harm.

*Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *24-35.  There is no basis for a different result here.  As

in *Xiaomi*, the labeling of Luokung "as a company that aids in efforts to 'directly threaten the

United States homeland' by way of 'weapons of mass destruction' and 'malicious cyber-enabled

actions'" provides the "potential for long-term reputational harm [that] is far more severe" than

other examples of government labeling that have been deemed irreparable reputational harm

justifying preliminary relief.  *Id.* at *28 (quoting E.O. 13959).  And, as in *Xiaomi*, because Luokung

"has already experienced and faces the prospect of continued severe and irreparable reputational

harm due to its designation as a CCMC, preliminary relief is justified."  *Id.*

In its prior decision, this Court held that even if damage to a company's reputation and

goodwill were fundamentally financial injuries subject to a more restrictive standard – a conclusion

this Court did not make – Xiaomi had still established irreparable harm based on evidence of

financial injuries akin to the evidence presented by Plaintiffs here.  *Id.* at *28-29.  The Court began

by establishing that when monetary harms are unrecoverable due to sovereign immunity, they can

constitute irreparable harm when they are "serious" or "severe," and went on to hold that Xiaomi

met either variation of that standard.  *Id.* at *29-30.  In doing so, it highlighted many of the same

harms that Luokung is suffering here.  *Id.* at *29-35.  For example, Luokung has submitted

evidence of the following harms, among others, which align with the analysis in *Xiaomi*:

- Nasdaq – the only public trading market for Luokung's shares – will halt all trading of Luokung's securities and delist Luokung, effective May 8, 2021.  Li Decl. ¶ 47; *see Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*31 (discussing harm of banks suspending trading linked to Xiaomi's shares and withdrawing Xiaomi from Hong Kong Stock Exchange listings); *see also Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 267-68 (2d Cir. 1984) (affirming finding that, among other things, "delisting of securities generally is a serious loss of prestige and has a chilling effect on prospective buyers").

- FTSE Russell removed Luokung from key stock indexes as a result of the CCMC Designation, and will not re-include Luokung unless the CCMC Designation is removed or the CCMC Prohibitions are rescinded.  Li Decl. ¶ 48.  Luokung's removal from these indexes will lead funds to divest Luokung's shares, creating further downward pressure on Luokung's share price, and inhibiting its access to capital.  *Id.*; *see Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*31 (discussing harm of removal from FTSE Russell indexes).

- Luokung's "economic losses are posed to accelerate if preliminary relief is denied," as a result of loss of access to the U.S. capital markets, which this Court recognized is "not so easily replaceable" as it provided 72% of all financing worldwide for non-financial firms in 2019.  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at \*33-34.  The U.S. capital markets are by far Luokung's most important source of funding.  Li Decl. ¶ 39.  Unlike Xiaomi, moreover, Nasdaq is the *only* public trading market for Luokung's shares, and thus the implementation of the CCMC Prohibitions and delisting of Luokung will cause even greater disruption for Luokung by effectively depriving Luokung and its shareholders of a public market for Luokung's securities.  Li Decl. ¶¶ 17, 47.  This is a stark contrast to *Xiaomi* and only further supports a finding of irreparable harm.

- Two of Luokung's key customers terminated their relationships with Luokung as a direct result of the CCMC Designation, which will cause Luokung more than $10 million dollars in lost revenue in 2021 alone, and irreparable damage to these longstanding business relationships.  Li Decl. ¶ 43; *see Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *31-32 (discussing harm associated with loss of three customers).

- Luokung faces significant difficulty recruiting and retaining top talent due to the CCMC Designation and the related prohibitions.  Li Decl.¶¶ 44-45; *see Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *34 (stating that "loss of talent" and inability to "recruit and retain employees to build—or even maintain—a plaintiff's business can constitute irreparable harm as well") (quotations and alterations omitted).

In summary, there is substantial evidence of irreparable reputational harm and severe economic injuries to Luokung that weigh strongly in favor of granting injunctive relief.[6] Moreover, the deprivation of Plaintiffs' constitutional rights itself constitutes irreparable harm, and provides another independent basis for finding irreparable harm in this case.  *See, e.g., Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009).

In addition to the irreparable harm to Luokung, the unrebutted evidence shows that the CCMC Prohibitions will also irreparably harm the Individual Plaintiffs.  As discussed above, Defendants effectively concede that the Individual Plaintiffs will suffer irreparable harm by March 2022, when they will be forced to sell their Luokung securities, but nonetheless insist that no harm is *imminent* because they have until next year to divest and can simply sell their Luokung

---

[6] Defendants continuously characterize Luokung as an "expanding commercial technology company" to suggest that the CCMC Designation is inconsequential.  Opp. 31, 33, 35.  But Luokung's business is being gravely impacted in a litany of ways including, but not limited to, a significant reduction in its ability to raise capital, resulting in serious impediments to its ability to proceed with key business plans and projects.  Li Decl. ¶¶ 37-50.

stock and reinvest.  Opp. 34.  Defendants' arguments take no account of how financial markets work.  As of May 8, 2021, Nasdaq – the only public market for Luokung's securities – will be delisting Luokung.  As of that date, there will be no practical way for the Individual Plaintiffs to sell their shares.  Furthermore, as of May 8, 2021, the Individual Plaintiffs will be prevented from receiving Luokung's shares to which they would otherwise be entitled under the company's Incentive Plan.  These awards are a critical part of the compensation of Luokung's key employees, and losing this benefit is anticipated to force the Individual Plaintiffs to sever their relationships with the company.  Bai Decl. ¶¶ 3-4; Li Decl. ¶¶ 49-50.  These and the other injuries documented in the Individual Plaintiffs' declarations are "both certain and great" and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *24 (quotations omitted).

## I.    The Balance of Equities and Public Interest Support Injunctive Relief.

The remaining factors in the preliminary injunction analysis – the balance of the equities and accord with public interest – also strongly support granting injunctive relief.  Absent immediate relief, Plaintiffs will suffer the serious, irreparable harms set forth above.  Defendants, by contrast, will not suffer any harm by an injunction pending resolution of Luokung's claims on the merits.  There is, moreover, "generally no public interest in the perpetuation of unlawful agency action."  *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

In their Opposition, Defendants parrot the same arguments they made and lost in *Xiaomi*, again contending that the public interest lies with the "security of the country's citizenry" over the "financial prosperity of an expanding technology corporation or of certain investors."  Opp. 36. As this Court recognized in *Xiaomi*, while the executive is generally afforded deference in matters of national security, it is questionable at best that "weighty national security interests are actually implicated here."  *Xiaomi*, 2021 U.S. Dist. LEXIS 46496, at *35.  Defendants based the CCMC

Designation of Luokung on "innocuous facts" drawn from Luokung's public announcements, *id.*, and have pointed to nothing implicating a national security interest.

Defendants attempt to distinguish *Xiaomi* by arguing that the "combination of factors" cited in the Luokung Decisional Memo support real public interests concerns.   Opp. 36. Defendants made the same basic argument in *Xiaomi*.   Further, when placed in the context of the "factors" that were actually considered, this contention rings hollow.   As detailed above, the five cited facts in the Decisional Memo reference Luokung's connection to general business sectors and publicly announced commercial contracts.   The vague implication that Luokung may nonetheless pose some potential national security threat is unsupported and false.   The only evidence before the Court confirms that Luokung is an independent and purely commercial technology company that was improperly, unlawfully, and falsely designated as a CCMC in the waning days of the Trump Administration.   There has been no evidence presented of any actual national security interest at stake here.   Accordingly, the Court should reach the same conclusion here as it did in *Xiaomi*.

## III.    CONCLUSION

Luokung respectfully requests that the Court enter a preliminary injunction enjoining the enforcement of the CCMC Designation and the CCMC Prohibitions as to Luokung.

DATED:  April 23, 2021                          Respectfully submitted,

                                                /s/ Creighton Magid
                                                Creighton Magid (D.C. Bar. No. 476961)
                                                Thomas Gorman (D.C. Bar No. 398734)
                                                DORSEY & WHITNEY LLP
                                                1401 New York Avenue, NW, Suite 900
                                                Washington, DC  20005
                                                Phone:  (202) 442-3555
                                                Fax: (202) 442-3199
                                                magid.chip@dorsey.com
                                                gorman.tom@dorsey.com

                                                Shawn Larsen-Bright (*Pro Hac Vice*)
                                                Benjamin D. Greenberg (*Pro Hac Vice*)
                                                DORSEY & WHITNEY LLP
                                                701 Fifth Avenue, Suite 6100
                                                Seattle, Washington  98104
                                                Telephone:  (206) 903-8800
                                                Fax:  (206) 903-8820
                                                larsen.bright.shawn@dorsey.com
                                                greenberg.ben@dorsey.com

                                                Kathryn A. Johnson (*Pro Hac Vice*)
                                                DORSEY & WHITNEY LLP
                                                50 South Sixth Street, Suite 1500
                                                Minneapolis, Minnesota  55402-1498
                                                Telephone:  (612) 492-6768
                                                Fax:  (612) 340-2868
                                                johnson.kate@dorsey.com

                                                Xichun (Catherine) Pan (*Pro Hac Vice*)
                                                DORSEY & WHITNEY LLP
                                                51 West 52nd Street
                                                New York, New York  10019-6119
                                                Telephone: (212) 415-9383
                                                Fax:  (646) 417-7279
                                                pan.catherine@dorsey.com

                                                *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of April, 2021, a copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION was filed electronically with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system and accomplished service via the same.

/s/ Creighton R. Magid

Creighton R. Magid